725 N.E.2d 997 (2000)
In re The PATERNITY OF T.M.Y.
Kevin Nickels, Appellant-Respondent,
v.
Kimberly YORK, Appellee-Petitioner.
No. 61A01-9909-JV-311.
Court of Appeals of Indiana.
March 31, 2000.
*999 James B. Organ, Organ Law Offices, Terre Haute, Indiana, Attorney for Appellant.
Jeffrey A. Modisett, Attorney General of Indiana, Michael McLaughlin, Deputy Attorney General of Indiana, Indianapolis, Indiana, Attorneys for Appellee.

*998 OPINION
MATTINGLY, Judge
Kevin Nickels appeals the trial court's refusal to set aside a judgment of paternity entered in 1982. He raises three issues for our review that we restate as:
1. Whether the 1982 paternity judgment is void for want of personal jurisdiction;
2. Whether the 1982 paternity judgment is void because it was entered without the court first appointing counsel for Nickels pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940;[1] and
3. Whether the trial court erroneously denied, in violation of his constitutional right to due process, Nickels' request for genetic testing as part of discovery in his motion to set aside the paternity judgment.
Additionally, Nickels appeals the trial court's arrearage determination and income withholding order made in a proceeding supplemental to the original paternity *1000 suit and asserts the trial court abused its discretion in ordering the arrearage despite finding Nickels was not in contempt for failing to pay child support.[2]
Affirmed.

FACTS AND PROCEDURAL HISTORY
On January 13, 1982, Kimberly York filed a petition to establish paternity for her son T.M.Y. born April 7, 1980. Her petition alleged Kevin Nickels was the child's father and sought to establish a child support order for T.M.Y.'s care and maintenance. At the time York filed her petition, Nickels was in the military and stationed in Bremerton, Washington. The court was aware of Nickels' military service.
Copies of the summons and notice to appear for the paternity hearing on April 5, 1982 were sent to Nickels at his military base in Washington. Nickels failed to appear at the hearing and the court heard testimony from York concerning paternity of T.M.Y. The court did not appoint counsel for Nickels.
As evidence of Nickels' paternity, York testified she had sexual intercourse with Nickels approximately five times during T.M.Y.'s probable month of conception, and that she did not have intercourse with any other men during the two months preceding or following the probable month of conception. She further testified Nickels had acknowledged to family and friends T.M.Y. was his son and had requested the opportunity to take T.M.Y. to "meet his grandmother." (R. at 16.) After hearing this evidence, the court found Nickels to be T.M.Y.'s father and ordered him to pay $25.00 per week toward T.M.Y.'s care and maintenance. A certified copy of the court's order was sent to Nickels in Washington.
Shortly after the court's order, Nickels began paying child support and continued to pay support from June 28, 1982 until October 29, 1984 when the payments stopped. During this same period, Nickels' wife wrote the trial court disputing its April 5, 1982 finding that Nickels was the father of York's child. On August 15, 1983, the trial judge wrote a reply to Nickels' wife in which he explained the paternity judgment and advised her to seek legal assistance if she had any further questions.
On February 11, 1998, York petitioned the court to find Nickels in contempt for willfully refusing to pay child support for over thirteen years. On November 12, 1998, the day of the contempt hearing, Nickels filed a motion to set aside the 1982 judgment and requested DNA paternity testing. Nickels' motion was denied by the trial court on December 8, 1998. At a contempt hearing on August 26, 1999, the trial court found Nickels had not willfully and intentionally violated the court's order of support. It did, however, find Nickels to have amassed an arrearage of $19,956.00 and ordered him to pay, in addition to his $25.00 weekly support, an arrears of $35.00 by income withholding.

DISCUSSION AND DECISION
Nickels' ultimate objective is for this court to vacate both the 1982 paternity judgment and 1999 arrearage order and remand the case so that genetic paternity testing can be completed. We first discuss Nickels' arguments concerning the validity of the 1982 paternity judgment and then discuss the propriety of the trial court's 1999 arrearage order.
A. 1982 Paternity Judgment
Nickels makes three arguments against the validity of the 1982 paternity judgment. First, he argues the judgment is void because the court was without personal jurisdiction when it entered the 1982 judgment. Next, Nickels argues the judgment *1001 is void because it was entered in violation of his right to counsel as guaranteed by the Soldiers' and Sailors' Act. Last, he argues his right to due process was violated when the trial court denied his request for genetic paternity testing as part of discovery in conjunction with his motion to set aside the default judgment.

1. Personal Jurisdiction

Before an Indiana court can exercise jurisdiction over a nonresident,[3] a plaintiff must satisfy both the Indiana long-arm statute, Ind. Trial Rule 4.4, and due process. The Due Process Clause of the Fourteenth Amendment requires that certain minimum contacts exist between a nonresident defendant and a plaintiff before personal jurisdiction is proper. Stidham v. Whelchel, 698 N.E.2d 1152, 1154 (Ind.1998) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Trial Rule 4.4 grants Indiana courts personal jurisdiction to the maximum extent allowed by the constitution. A judgment rendered by a State without sufficient contacts is void as offending traditional notions of fair play and substantial justice. Id.
Nickels argues the 1982 paternity judgment is void because the trial court lacked evidence of the necessary minimum contacts needed to satisfy the Due Process Clause of the Fourteenth Amendment.[4] He correctly acknowledges that sexual intercourse leading to conception is a sufficient contact in a paternity suit to confer personal jurisdiction by satisfying both T.R. 4.4 and due process. Neill v. Ridner, 153 Ind.App. 149, 153, 286 N.E.2d 427, 429 (1972). The thrust of his argument, however, is that while the Record establishes the fact that sexual intercourse between the parties took place somewhere, it does not specifically state the location of that intercourse leading to conception. He argues since intercourse leading to conception is the only link between Nickels and Indiana, the deficiency in the Record on this point voids the judgment. We disagree.
We believe there is sufficient evidence in the Record from which the trial court could have inferred personal jurisdiction over Nickels. York testified she lived in Indiana both at the time T.M.Y. was born and two years later at the time of the paternity hearing. When asked about her relationship with Nickels, she stated "he come over every day for about two weeks." (R. at 17.) Based on this, the trial court could have inferred that sexual intercourse leading to conception took place in Indiana.
However, we need not decide whether the evidence was sufficient to support this inference as Nickels has waived this argument on appeal by failing to properly raise it before the trial court. Additionally, he is estopped from making this argument as he voluntarily submitted to the jurisdiction of the court by paying on the child support order for over two years.
Relevant to this discussion is our supreme court's personal jurisdiction holding in Stidham v. Whelchel. Stidham involved an attack on the validity of a default paternity judgment made seventeen years after the judgment was rendered. The defaulted, non-resident party moved under T.R. 60(B)(6) to set aside the judgment as void for lack of personal jurisdiction. The trial court denied the defaulted party's motion holding that it had not been brought within *1002 a "reasonable time" as required by Rule 60(B). Reversing, our supreme court held "a judgment that is void for lack of personal jurisdiction may be collaterally attacked at any time and that the `reasonable time' limitation under Rule 60(B)(6) means no time limit." Id. at 1156 (citing Person v. Person, 563 N.E.2d 161, 163 (Ind.Ct.App. 1990)).
While holding judgments rendered without personal jurisdiction are void and therefore nullities at inception, the court went on to suggest that such judgments could nonetheless be ratified by the person over whom there must be jurisdiction (i.e., the defendant). It held: "A court simply has no power over persons who have no contact with their territory, unless and until there is a response or an appearance and the lack of personal jurisdiction is not protested," id. at 1155 (emphasis added), and "[a] claim of lack of personal jurisdiction may of course be waived or, [to put it another way], is susceptible to `cure' or `waiver.'" Id. This language indicates that even though a judgment rendered without personal jurisdiction is a nullity from the start, a party against whom the court entered the judgment can ratify this originally null judgment. Cf. Greer v. State, 685 N.E.2d 700, 703 (Ind.1997) ("Subject matter jurisdiction never can be waived, and can be raised at any step in the appeal process.").
The Stidham holding stems from the court's concern that if a judgment rendered without personal jurisdiction were merely voidable and therefore presumptively valid, a party could potentially hoodwink a judge into entering a default judgment against a nonresident without minimum contacts and thereby place the onus on the defaulted party to come forward within a reasonable time to defend his rights. Stidham, 698 N.E.2d at 1154. Holding judgments entered without personal jurisdiction void while simultaneously holding a "reasonable time" to mean at any time, Stidham partially protects defaulted parties to the extent they can attack a judgment via T.R. 60(B) even after many years. However, this protection of defaulted parties is tempered by the court's maintenance of the traditional rules governing waiver and estoppel to challenge personal jurisdiction under certain circumstances.
Nickels did not offer his personal jurisdiction argument to the trial court in his T.R. 60 motion. As a general rule, a party may not change its theory on appeal and present arguments that are different from those raised in the trial court. Franklin Bank & Trust Co. v. Mithoefer, 563 N.E.2d 551, 553 (Ind.1990), citing Thompson v. Public Serv. Co. of Ind., 499 N.E.2d 788 (Ind.Ct.App.1986); Richardson v. Citizens Gas & Coke Util., 422 N.E.2d 704 (Ind.Ct.App.1981); Piskorowski v. Shell Oil Co., 403 N.E.2d 838 (Ind.Ct.App. 1980).[5] In an effort to preserve this argument on appeal, Nickels claims in his reply brief that the personal jurisdiction argument was actually part of his original T.R. 60 motion made before the trial court. In his reply brief, he states: "[t]he personal jurisdiction argument is merely another reason to say that the judgment is void under T.R. 60." (Reply Br. of Appellant at 6.) We disagree; the argument is in fact new.
Implicit in the Stidham holding is that any personal jurisdictional attack on a judgment must be made properly. Therefore, Nickels could have either appealed the paternity judgment directly to this court within thirty days, Ind. Appellate Rule 2, or moved to set aside the *1003 judgment under T.R. 60(B)(6) on personal jurisdiction grounds "at any time." He has done neither and has therefore waived the ability to make this argument on appeal.
Additionally, Nickels is estopped from asserting lack of personal jurisdiction as he voluntarily submitted to the court's jurisdiction by paying on the child support order for over two years. This court has held when a party either seeks affirmative relief from a court or fails to object in a timely manner to the jurisdiction of a court, he has voluntarily submitted his person to that court. Hoehn v. Hoehn, 716 N.E.2d 479, 482 (Ind.Ct.App.1999) (citing Schneider v. Schneider, 555 N.E.2d 196, 199 (Ind.Ct.App.1990)). Once that has been done, a party will not be allowed thereafter to challenge the court's personal jurisdiction. Id. Where a party has failed to object in a timely manner, that party is precluded on the theory of waiver from making the argument. Id. Where a party has requested affirmative relief, that party is prevented on the theory of estoppel from challenging personal jurisdiction. Id.
In this case, Nickels is estopped from raising the jurisdictional claim because he voluntarily submitted himself to the trial court's jurisdiction. A person may be estopped from challenging a void judgment if that person has manifested an intention to treat a judgment as valid. Jennings v. Jennings, 531 N.E.2d 1204, 1206 (Ind.Ct.App.1988). As this court stated in Jennings (quoting Restatement (Second) of Judgments § 66):
Relief from a default judgment on the ground that the judgment is invalid will be denied if:
(1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and
(2) Granting the relief would impair another person's substantial interest of reliance on the judgment.
531 N.E.2d at 1206.
In this case, Nickels voluntarily submitted himself to the trial court's jurisdiction by failing to contest the court's jurisdiction over his person and instead complying with the court's order in paying child support for over two years. Nickels' prior actions are inconsistent with his current position that the judgment is invalid. Furthermore, the interests of York and T.M.Y. would be greatly impaired as not only is some $19,956.00 at stake but so is the identity of T.M.Y.'s father that was judicially established nearly eighteen years ago.

2. Soldiers' and Sailors' Act

Nickels next claims the trial court had a duty to appoint him counsel prior to entry of the 1982 paternity judgment pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940.[6] The court's failure to comply *1004 with the Act, he argues, deprived him of due process so as to render the 1982 judgment void, and the trial court's failure to set aside the judgment pursuant to his T.R. 60(B)(6) motion was an abuse of discretion. We disagree.
The Soldiers' and Sailors' Civil Relief Act of 1940 was enacted to protect "those who have been obliged to drop their own affairs to take up the burdens of the nation" from exposure to personal liability without an opportunity to appear and defend in person or through counsel. Burbach v. Burbach, 651 N.E.2d 1158, 1162 (Ind.Ct.App.1995) (citing Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 87 L.Ed. 1587 (1943)). See also In re Realty Assoc. Sec. Corp., 53 F.Supp. 1015, 1015-16 (E.D.N.Y.1944). Section 520 of the Act provides in subdivision (1) that:
In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service.... If an affidavit is not filed showing that the defendant is not in the military service, no judgment shall be entered without first securing an order of court directing such entry, and no such order shall be made if the defendant is in such service until after the court shall have appointed an attorney to represent defendant and protect his interest, and the court shall on application make such appointment.
(Emphasis added.)
In this case, the trial court knew in 1982 Nickels was in the military. It nonetheless defaulted him and entered a judgment of paternity without appointed counsel as required by the statute. There is no doubt that the trial court erred in its failure to appoint counsel when it knew Nickels to be in the military. However, this does not make the judgment void for denial of due process. Judgments entered in violation of this section are merely voidable and not void. Krumme v. Krumme, 6 Kan.App.2d 939, 636 P.2d 814, 817 (1981). Such a judgment will remain valid until it is properly attacked by the serviceman pursuant to § 520(4). Davidson v. General Fin. Corp., 295 F.Supp. 878, 881 (N.D.Ga.1968); Rentfrow v. Wilson, 213 A.2d 295, 296 (D.C.1965); Ostrowski v. Pethick, 404 Pa.Super. 392, 590 A.2d 1290, 1293 (1991); Allen v. Allen, 30 Cal.2d 433, 182 P.2d 551, 553 (1947). Subdivision (4) provides:
If any judgment shall be rendered in any action or proceeding governed by this section against any person in military service during the period of such service or within thirty days thereafter, and it appears that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application, made by such person or his legal representative, not later than ninety days after the termination of such service, be opened by the court rendering the same and such defendant or his legal representative let in to defend; provided it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof.
Therefore, in his motion to set aside the judgment, Nickels was required to challenge the judgment within ninety days after the termination of his service and prove that (1) he was prejudiced by reason of his military service, and (2) he had a meritorious defense to the underlying action. Ostrowski, 590 A.2d at 1292. He did not do this. Assuming Nickels' *1005 attack was timely when initiated on November 12, 1998,[7] the trial court did not abuse its discretion in denying his motion as Nickels neither presented evidence of prejudice nor argued a meritorious defense as required by the Soldiers' and Sailors' Act.

3. Request for Genetic Paternity Testing

Discovery under T.R. 60(B) is permissive rather than mandatory. "The grant or denial of motions for discovery rest within the sound discretion of the trial court and will only be reversed for an abuse of that discretion." Keystone Square v. Marsh Supermarkets, Inc., 459 N.E.2d 420, 425 (Ind.Ct.App.1984) (discussing discovery specifically requested under T.R. 60(B)). Therefore, the trial court was not required to grant Nickels' discovery request and its failure to do so was not an abuse of discretion.
Additionally, the use of genetic testing to set aside paternity is outside the equitable discretion of the trial court. Fairrow v. Fairrow, 559 N.E.2d 597, 599 (Ind.1990) ("One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court."). See also In re Paternity of K.M., 651 N.E.2d 271, 276 (Ind.Ct.App.1995); Pinter v. Pinter, 641 N.E.2d 101, 105 (Ind. Ct.App.1994). Therefore, even if the trial court had wanted to grant Nickels' discovery request, it was barred from doing so.
B. Arrearage Order
Nickels argues the arrearage order entered on August 26, 1999 after a hearing on his alleged contempt of court is erroneous and should be vacated. His argument is premised on the belief that a finding that Nickels was not in contempt prevented the court from enforcing, on its own initiative, the 1982 judgment by way of an arrearage order and wage garnishment. This is not the case.
A trial court's authority to order an arrearage is separate from its authority to find contempt. Ind.Code § 31-16-12-1 provides:
Notwithstanding any other law, all orders and awards contained in a child support decree may be enforced by:
(1) contempt;
(2) assignment of wages or other income; or
(3) any other remedies available for the enforcement of a court order.
Given this express authority granted the trial court when enforcing support orders, there is no error or inconsistency in the trial court's not finding Nickels in contempt yet ordering an arrearage and wage withholding.

CONCLUSION
Both the 1982 paternity judgment and the 1999 arrearage determination and income withholding order are valid.
First, Nickels' argument against personal jurisdiction fails as we believe there was sufficient evidence before the trial court in 1982 for it to have inferred the necessary minimum contacts. Nonetheless, Nickels waived the ability to make this argument as he failed to first offer it to the trial court in his T.R. 60 motion. Additionally, he is estopped from making the argument as he voluntarily submitted to the court's jurisdiction by complying with its child support order for over two years.
Second, though the trial court improperly entered its 1982 paternity judgment against Nickels by failing to appoint him counsel when it knew him to be in military service, Nickels failed to comply with the *1006 Act's requirements for setting aside the judgment.
Third, the trial court did not abuse its discretion when it refused Nickels' request for genetic paternity testing as part of discovery. The decision whether to grant discovery is within the sound discretion of the trial court. We cannot say the court abused its discretion when the use of genetic testing to set aside paternity is outside its equitable discretion.
Finally, the trial court did not abuse its discretion by not finding Nickels in contempt for willfully failing to pay child support while simultaneously ordering an arrearage and income withholding. Ind. Code § 31-16-12-1 specifically grants the trial court authority to enforce child support orders by income withholding. This authority exists apart from the court's authority to find an arreared parent in contempt.
Affirmed.
BAKER, J., and BAILEY, J., concur.
NOTES
[1] 50 U.S.C.App. §§ 501-593.
[2] Oral argument was heard in the Court of Appeals Courtroom in the Statehouse on February 22, 2000.
[3] The issue of Nickels' nonresident status at the time of York's paternity petition is not in dispute.
[4] On more than one occasion in his briefs, Nickels alludes to a possible failure of process before the 1982 paternity hearing. (Br. of Appellant at 13; Reply Br. of Appellant at 10, 16.) While a judgment entered where there has been no service of process is void for want of personal jurisdiction, Stidham, 698 N.E.2d at 1155 n. 3, Nickels never makes this a part of his argument.
[5] In his reply brief, Nickels concedes this point stating:

While Nickels agrees that one who does not object in the trial court generally does not preserve error for appeal, fundamental error may lie even when no objection has been made in the trial court, if the correction of the error on appeal would preserve the appellant's rights to due process of law.
(Reply Br. of Appellant at 6-7.) Nickels never explains what makes this error fundamental.
[6] While Nickels seems to claim a right to counsel pursuant to the Soldiers' and Sailors' Act, he curiously makes statements in both his appellate brief and reply brief which suggest that the Act is not the source of his right or the basis of his argument. For example, he states "[t]he Soldiers and Sailors Act, 50 U.S.C.[App.] § 500 et seq., was enacted by the United States Congress to further emphasize the importance of providing due process of law and the right to counsel to persons who have sworn to defend our country." (Br. of Appellant at 14) (emphasis added). He is more adamant about the secondary nature of the Act in his reply brief where he states:

Nickels sought relief from judgment under the provisions of Rule 60, not under the Soldiers and Sailors Act. Both below, and on appeal, Nickels has invoked the provisions of the Soldiers and Sailors Act, to support the importance of the right to counsel in these types of cases. Nickels has argued throughout these proceedings that by failing to appoint counsel at a time when the Trial Court was aware he was not present and was in the military, Nickels' right to counsel was violated, and the resulting judgment denied him due process of law.
(Reply Br. of Appellant at 12) (emphasis added).
Other than the general statement that he is guaranteed due process by the "Sixth and Fourteenth Amendments to the United States Constitution, and Article I, § 12, of the Indiana Constitution," (Br. of Appellant at 14), Nickels provides no other source of his right to counsel in a paternity suit. Nickels cites Kennedy v. Wood, 439 N.E.2d 1367 (Ind. Ct.App.1982) for the proposition that the denial of blood grouping tests to an indigent paternity defendant violates that defendant's rights to due process. (Id. at 18.) While Kennedy also holds that an indigent defendant in a paternity suit has the right to court appointed counsel, 439 N.E.2d at 1372, Nickels neither cites Kennedy for this proposition nor claims it applies to his situation.
[7] York points out that "certified mail addressed to Nickels at a residential address in Dana, Indiana, also in Vermillion County, was signed and accepted on July 7, 1998," (Br. of Appellee at 14), which is more than 90 days before November 12, 1998. She concedes, however, that this does not prove the date of Nickels' discharge but argues it suggests that his military service had been terminated by this point.