Joseph JOHNSTON, Appellant–Respondent,

v.

Terry JOHNSTON, Appellee–Petitioner.

No. 45A03–0405–CV–234.

Court of Appeals of Indiana.

April 22, 2005.

Glenda Smith, Hamilton, OH, Attorney for Appellant.

## OPINION

BAKER, Judge.

Appellant-respondent Joseph Johnston appeals the trial court's judgment ordering

him to pay post-secondary education child support for his two children, claiming that the Lake Superior Court lacked personal jurisdiction over him because he had no contacts in Indiana and never waived the issue of jurisdiction. Johnston also argues that the "Petition to Modify Divorce Decree" that was filed by his former wife, appellee-petitioner Terry Johnston, failed to meet the statutory criteria regarding a request for the payment of child support. Concluding that the trial court improperly exercised its jurisdiction over Joseph with respect to the payment of child support, we reverse the judgment and remand this cause to the trial court with instructions that it dismiss Terry's request for support.

## FACTS

Joseph and Terry were married on February 14, 1980. Thereafter, on October 17, 1996, Terry petitioned to dissolve the marriage. During the course of the marriage, two children had been born: J.J.—the parties' son—was born on March 29, 1980, and D.J.—their daughter—was born on May 19, 1981.

Joseph did not enter an appearance in the dissolution matter, and he did not participate in those proceedings. Joseph was served with the petition via certified mail at his Columbus, Ohio address. On February 24, 1997, the marriage was dissolved, yet no petition for child support had ever been filed. Thus, no order regarding child support payments was entered into the record. However, the parties apparently had entered into an informal agreement regarding Joseph's payment of child support that presumably was to cease when the children turned eighteen or nineteen years old. Joseph alleged that he had "voluntarily paid child support until the last child finished high school." Appellant's App. p. 26.

On April 13, 2000, Terry filed a petition to modify the dissolution decree, where she sought educational support for D.J. and J.J. from Joseph. At that time, both children were college students. D.J., who was nineteen years old, attended Purdue Calumet in Indianapolis in 1999 and 2000. Twenty-year-old J.J. attended Purdue University in Lafayette and, at the time of the hearing, was in his junior year. However, J.J. was compelled to withdraw from the current semester "because of no money" and academic deficiencies. Tr. p. 29, 35–36. It was also established at the time of the hearing that D.J. had one child, was pregnant with another, and was attending Commonwealth College. In response to Terry's petition to modify, Joseph moved to dismiss for lack of jurisdiction on the grounds that he: (1) never lived in Indiana; (2) never lived in a marital relationship in Indiana; (3) was never married in Indiana; and (4) never waived jurisdiction in favor of Indiana. Joseph also asserted that, although Indiana law continues child support throughout college in most cases, "Ohio child support ends at age eighteen (18)." Appellant's App. p. 26.

While the trial court set a hearing on the petition, Joseph filed a second motion to dismiss on July 30, 2002, on the grounds of improper procedure, emancipation and laches. In particular, Joseph contended that he voluntarily paid child support in the amount of $240 per month until both children had completed high school, that J.J. maintained his own apartment in Lafayette for the past three years, that J.J. has received financial aid, had been employed, and had received "intermittent" support. Appellant's App. p. 38. Joseph also alleged that D.J. has been "in and out of college since age 18," was not currently in college, and had a child of her own. Appellant's App. p. 38–39. Thus, Joseph asserted that because J.J. has not been under the care or control of either parent

for at least three years, he should be found emancipated. Also, D.J. should be found emancipated because she is over eighteen years old, has not attended school the last four months "and is or is capable of taking care of herself." Appellant's App. p. 39.

Joseph's counsel indicated to the court that "they were only interested in a decision on the personal jurisdiction issue so that they could act accordingly." Tr. p. 8. Nonetheless, a hearing commenced on September 30, 2002 "on all pending matters." Tr. p. 4. Neither Joseph nor his counsel appeared at that hearing. But the trial court learned—through Terry's counsel—that Joseph's counsel is his wife, and that "Glenda Smith contacted the Court via telephone and advised the Court that it would be [a] hardship for [Joseph] to appear at the scheduled hearing because [Joseph's] wife had had a C-section surgery two weeks preceding the scheduled hearing." Appellant's App. p. 28. Following that hearing, an order was entered on October 4, 2002, where it was determined, among other things, that the trial court

> has personal jurisdiction over [Joseph] because [Joseph] . . . filed a responsive document that has the effect of waiving a contest to personal jurisdiction over him. One document that [Joseph] had filed with the Court was the Verified Joint Notice of No Contested Issue and Waiver of Final Hearing; thus, the Court has personal jurisdiction under I.C. § 31–18–2–2(2)(C).

Appellant's App. p. 31. It was also determined that Joseph had tendered discovery requests to Terry regarding the emancipation of the children, and that he had moved for sanctions for Terry's noncompliance with the discovery. Appellant's App. p. 31. The trial court commented at the hearing that

> Attorney Smith has been signing the documents as the attorney for Mr. John-

ston and then she files with the Court on October 13, it's dated October 15, 2002 where she then enters her appearance for the purpose of contesting personal jurisdiction. She can't have it both ways.

Tr. p. 7.

On October 15, 2002, Joseph's counsel filed an appearance in this action "for the sole purpose of contesting personal jurisdiction." Appellant's App. p. 50. Joseph also submitted a proposed order and judgment on the pleadings with respect to the motion to dismiss that had been filed. Another order issued by the trial court—dated October 18, 2002—denied the motion for judgment on the pleadings and ordered Joseph to pay $150 in attorney's fees to Terry's counsel. The trial court did not immediately rule on the motion to dismiss. Rather, another hearing was conducted on November 15 regarding the support issues that Terry had presented. While Joseph had notice of that hearing, neither he nor his counsel appeared.

In the end, after hearing the evidence with regard to college expenses that the children had incurred, the trial court stated on the record that Joseph "needs to pay two-thirds of all tax bills and he is ordered to pay two-thirds of his child, [J.J.'s] college and two-thirds for his daughter." Tr. p. 44. The trial court also stated that it would issue a wage withholding order to have the amount taken directly from Joseph's wages.

Sometime after this hearing, Joseph's counsel telephoned the Lake Superior Court Clerk's Office to see what had transpired in the case. That office informed her that the last entry that had been made in the matter was a wage assignment. Joseph's counsel then contacted Terry's attorney, whereupon he faxed her a copy of an order granting Terry's petition to modify the dissolution decree. The order af-

firmed that Joseph was to pay two-thirds of all past bills incurred by J.J. while he attended college, as well as his current college bills. Joseph was also ordered to pay two-thirds of the college expenses for D.J. The order went on to state that: "The Court finds that the past amounts have (sic) for [J.J.'s] college are $7,390.00.... The Court finds that the past amounts for [D.J.'s] college have been $1,735.00.... Thus, Respondent, Joseph ... has an arrearage of (2/3) of $1,735.00 ... for [D.J.]." Appellant's App. p. 64. Following the entry of this order, Terry's counsel mailed a verified motion for contempt citation and proposed orders on May 3, 2004, as a result of Joseph's failure to pay the $150 attorney fee amount. Joseph now appeals.

### DISCUSSION AND DECISION

We note at the outset that Terry has filed no appellee's brief in this case. This court has previously held that when the appellee fails to file a brief on appeal, we may in our discretion reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *See Ward v. Ward,* 763 N.E.2d 480, 481 (Ind.Ct.App.2002). This rule was established for our protection so that we can be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Id.*

### I. Lack Of Jurisdiction

In considering Joseph's argument as to the lack of jurisdiction, we note that the existence of personal jurisdiction over a defendant is a constitutional requirement to rendering a valid judgment. *Anthem Ins. Co. v. Tenet Healthcare,* 730 N.E.2d 1227, 1237 (Ind.2000). Personal jurisdiction either exists or it does not, and its existence is a question of law that we

review de novo. *Id.* Accordingly, we owe no deference to the trial court's determination that it had jurisdiction over Joseph. *Id.* Furthermore, a challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss. In either case, once the party contesting jurisdiction challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. However, the defendant bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint. *Id.* at 1231.

We note that Indiana has adopted the Uniform Interstate Family Support Act (UIFSA). Pursuant to the Act—Indiana Code section 31–18–1–1 to –9–4—a mechanism is provided for cooperation between state courts in enforcing duties of support. *Stidham v. Whelchel,* 698 N.E.2d 1152, 1156 n. 1 (Ind.1998). UIFSA provides that an Indiana court may exercise personal jurisdiction over nonresidents under the following circumstances: In a proceeding to establish, enforce, or modify a support order or to determine paternity, an Indiana tribunal may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:

(1) the individual is personally served with notice in Indiana;

(2) the individual submits to the jurisdiction of Indiana by:

　(A) consent;

　(B) entering an appearance, except for the purpose of contesting jurisdiction; or

　(C) filing a responsive document having the effect of waiving contest to personal jurisdiction;

(3) the individual resided in Indiana with the child;

(4) the individual resided in Indiana and has provided prenatal expenses or support for the child;

(5) the child resides in Indiana as a result of the acts or directive of the individual;

(6) the individual engaged in sexual intercourse in Indiana and the child:

 (A) has been conceived by the act of intercourse; or

 (B) may have been conceived by the act of intercourse if the proceeding is to establish paternity;

(7) the individual asserted paternity of the child in the putative father registry administered by the state department of health under IC 31–19–5; or

(8) there is any other basis consistent with the Constitution of the State of Indiana and the Constitution of the United States for the exercise of personal jurisdiction.

Ind.Code § 31–18–2–1. Notwithstanding the above, however, our supreme court has also determined that a judgment entered without "minimum contacts" violates the Due Process Clause of the Fourteenth Amendment. *In re Paternity of A.B.*, 813 N.E.2d 1173, 1175 (Ind.2004). That is, an Indiana tribunal can exercise personal jurisdiction over a nonresident only upon satisfaction with eight enumerated conditions intended to satisfy due process requirements. *Id.* In *Stidham*, it was observed that

A court simply has no power over persons who have no contact with their territory, unless and until there is a response or an appearance and the lack of personal jurisdiction is not protested. Accordingly, if Stidham is correct that no minimum contacts existed, then the Indiana trial court did not have personal

jurisdiction over him and its effort to exercise that power was a nullity.

*Stidham*, 698 N.E.2d at 1155.

Here, Joseph claims the trial court never obtained jurisdiction over him because, among other things, he never waived jurisdiction in favor of Indiana. Joseph argues that the trial court erred in finding that personal jurisdiction under UIFSA existed because he "allegedly signed a Verified Joint Notice of No Contested Issue and Waiver of Final Hearing in the dissolution matter." Appellant's Br. p. 15. Inasmuch as the UIFSA provisions apply in the establishment, enforcement or modification of support matters or with respect to the determination of paternity issues, Joseph argues that his waiver of the final hearing in the dissolution matter is not "attendant to a proceeding to establish, enforce or modify a support order." Therefore, Joseph urges that the basis for the trial court's finding of jurisdiction was incorrect. Appellant's Br. p. 15.

In addressing this contention, Joseph correctly points out that a dissolution action does not require in personam jurisdiction of both parties, yet a proceeding with regards to a support order is incident to the marriage and requires the in personam jurisdiction of both parties. And Joseph properly asserts that the UIFSA provisions are not applicable in dissolution matters. *See* I.C. § 31–18–2–1.

In addition to the above, we note that *In re Paternity of T.M.Y.*, 725 N.E.2d 997 (Ind.Ct.App.2000), *trans. denied*, offers some guidance on this issue. In *T.M.Y.*, York—who lived in Indiana and was the mother of a child who was born in 1980—filed a paternity petition against Nickels, the child's alleged father, in 1982. When the petition was filed, Nickels was in the military and was stationed in Washington State. Although copies of the summons and notice to appear for the paternity

hearing were sent to Nickels at the Washington base, he failed to appear at the hearing. The trial court heard testimony from York concerning the paternity of the child. York testified that she had sexual intercourse with Nickels approximately five times during the month that the child had been conceived and that she did not have intercourse with any other men during the two months preceding or following that particular month. York also testified that Nickels represented to his family and friends that the child was his. Following the hearing, Nickels was found to be the child's father, and the trial court ordered him to pay $25 per week in child support. *Id.* at 1000.

Upon receiving the order, Nickels began paying child support from June 28, 1982 until October 29, 1984, when he stopped the payments. Also, Nickels's wife wrote to the trial court disputing the finding that Nickels had fathered York's child. York then petitioned the trial court to find Nickels in contempt for willfully refusing to pay child support for over thirteen years. On the day of the contempt hearing, Nickels filed a motion to set aside the 1982 judgment and requested DNA paternity testing. Nickels' motion was denied and, following the hearing, the trial court determined that Nickels was in arrears in the amount of $19,956. Hence, Nickels was ordered to make weekly support payments and weekly arrears payments of $35.00. *Id.* On appeal, Nickels argued—among other things—that the 1982 paternity judgment was void because the court lacked personal jurisdiction over him.

In affirming the trial court's judgment, we acknowledged that Nickels "*voluntarily* submitted to the jurisdiction of the court by paying on the child support order for over two years." *Id.* at 1002 (emphasis added). In arriving at this result, we cited *Stidham* for the proposition that "[a] court

simply has no power over persons who have no contact with their territory unless and until there is a response or an appearance and the lack of personal jurisdiction is not protested." *Id.* at 1002 (quoting *Stidham*, 698 N.E.2d at 1155). We also recognized that a claim of lack of personal jurisdiction may be waived. *Paternity of T.M.Y.*, 725 N.E.2d at 1002. That is, even though a judgment rendered without personal jurisdiction is a nullity from the start, a party against whom the court entered the judgment "can ratify a judgment that was originally null." *Id.* Along these lines, we observed that

Nickels is estopped from asserting lack of personal jurisdiction as he voluntarily submitted to the court's jurisdiction by paying on the child support order for over two years. This court has held *when a party either seeks affirmative relief from a court or fails to object in a timely manner to the jurisdiction of a court, he has voluntarily submitted his person to that court.*

\* \* \*

In this case, Nickels voluntarily submitted himself to the trial court's jurisdiction by failing to contest the court's jurisdiction over his person and instead complying with the court's order in paying child support for over two years. Nickels' prior actions are inconsistent with his current position that the judgment is invalid. Furthermore, the interests of York and [the child] would be greatly impaired as not only is some $19,956.00 at stake but so is the identity of [the child's] father that was judicially established nearly eighteen years ago. *Id.* at 1003 (emphasis added).

 Unlike the circumstances in *T.M.Y.*, the record here demonstrates that Joseph's prior acts were, indeed, consistent with his current position attacking the alleged lack of the trial court's jurisdiction

over him. To be sure, Joseph's counsel made it clear that she was entering her appearance solely for the purpose of contesting jurisdiction. And Joseph never made support payments under a signed order as Nickels did in *T.M.Y.* While Joseph may have tendered some discovery requests that pertained to the merits of this case, we have recognized that a party who questions the trial court's jurisdiction over his person is still permitted to defend against the action brought against him. That is, he is not required to sit idly by and permit the other party to prevail while hoping that he might win the jurisdictional issue on appeal.[1] *See State v. Omega Painting, Inc.,* 463 N.E.2d 287, 292 n. 5 (Ind.Ct.App.1984) (recognizing that a contrary conclusion could well invite rash or hasty pleading, or the risky acceptance of a default judgment in the hope that it could later be set aside for lack of personal jurisdiction. "This is clearly not the type of practice our rules of procedure envisioned."), opinion on reh'g 464 N.E.2d 940 (Ind.Ct.App.1984) (correcting factual misstatement in original opinion), *trans. denied.* Hence, the motions that Joseph filed in this case did not rise to the level of consent to the trial court's jurisdiction over his person. To be sure, in examining the provisions of UIFSA, there is no evidence demonstrating that any event occurred—or that Joseph did anything—that would have subjected him to the jurisdiction of the Indiana courts. Hence, the trial court erred in determining that it had jurisdiction over Joseph in this case and in entering the support order.

The judgment of the trial court is reversed, and this cause is remanded with instructions that Terry's request for support be dismissed.[2]

KIRSCH, C.J. and BARNES, J., concur.

---

1. Our supreme court has recognized that "[i]t is a bold move, but an option available to a nonresident is to ignore a pending proceeding and take the risk that a subsequent challenge to personal jurisdiction will prevail." *Stidham,* 698 N.E.2d at 1156.

2. Inasmuch as we have reversed the trial court for the reason that there was no jurisdiction over Joseph's person, we do not address his additional contention that Terry's petition to modify the dissolution decree was an improper mechanism in which to initiate child support proceedings.