STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS


In Re C.K.

No. 12–1279

(Mercer County 12-JA-12-OA)

**FILED**

**October 28, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA


MEMORANDUM DECISION

The petitioner Bradley C.[1] filed this appeal[2] from an October 24, 2012, order of the Circuit Court of Mercer County terminating the petitioner's parental rights to Carlissa K.[3] The guardian ad litem for the child, John Earl Williams, filed a response supporting the circuit court's order. The Department of Health and Human Resources (hereinafter "DHHR"), by its attorney, Angela Alexander Walters, also filed a response supporting the circuit court's order.

This Court has considered the parties' briefs and the record provided to this Court on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure. This decision is reversed, and this case is remanded for further proceedings consistent with this opinion.

The DHHR filed an abuse and neglect petition on January 31, 2012, and a supplemental petition on May 29, 2012, adding the petitioner as a putative father. The supplemental petition alleged that the petitioner had abandoned Carlissa K. physically,

---

[1]In cases involving sensitive facts, this Court adheres to our usual practice of referring to the parties and other individuals by their initials. *See State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2]The petitioner filed this appeal by counsel Natalie N. Hager, representing the petitioner as an absent putative father.

[3]The child, Carlissa K., was born on September 13, 2011, and currently resides with her mother. The petitioner, Bradley C., is alleged to be the child's biological father.

financially, and emotionally.[4]  The petitioner could not be located for personal service of process.

On July 16, 2012, the circuit court continued a planned adjudicatory hearing in order to ensure that requirements for publication of notice to the petitioner had been satisfied.  Pursuant to West Virginia Code § 49-6-1(b) (2009) and West Virginia Code § 49-3-1(c)(2) (2009), requirements for publication of notice were satisfied through the DHHR's certificate of publication in the Bluefield Daily Telegraph, in Mercer County, West Virginia, the last county of known residence for the petitioner.

The circuit court held an adjudicatory hearing on August 27, 2012, and the court found that the petitioner had neglected the child to the level of abandonment.[5]  The mother testified that her sexual relations with the petitioner were a "one time thing" and that he had represented to her that he was in the military.  The mother did not have a current address or telephone number for the petitioner.  A private investigator, Mr. David Belcher, had also been hired by the guardian ad litem and had unsuccessfully attempted to locate the petitioner.

A dispositional hearing was held on October 15, 2012, and the petitioner's parental rights were terminated by order entered on October 24, 2012, upon motion of the DHHR.  The circuit court thereafter conducted a May 31, 2013, status hearing.  During that hearing, and in spite of the termination of the petitioner's parental rights which had already occurred, the mother reiterated her prior testimony concerning the petitioner and explained that she did not know whether the petitioner had provided a real or fictitious name and that he had not provided her with any identification.  She also stated that she had not had any contact with the petitioner since their sexual encounter and again stated that he had

---

[4]The original petition named Carlissa K.'s mother, Sabrina G.; a putative father named Carless K.; and an "Unknown/Unnamed Father" as the respondents.  The petition alleged a prior termination of parental rights of Sabrina G. to another child in 2010 and alleged that Carlissa K. had tested positive for methadone at birth. While the original petition named Carless K. as a putative father, a subsequent paternity test excluded him as the child's biological father, and the child's mother testified that the petitioner was the only other possible "option" as the child's biological father.  Because the petitioner has not been located, no paternity testing has been accomplished to determine whether he is Carlissa K.'s biological father.

[5]West Virginia Code § 48-22-306 (2009) provides the definitions for abandonment which were applied in this case, based upon the petitioner's complete absence of involvement in the life of this child.

represented that he was in the military.

The private investigator, Mr. Belcher, also testified during the May 31, 2013, hearing. This Court's review of the record of Mr. Belcher's testimony does not reveal any details regarding his investigation and does not indicate whether he specifically engaged in any investigation of the status of military service by the petitioner. Additionally, questioning during the May 31, 2013, hearing revealed that the private investigator had searched for the petitioner under a misspelled last name.

The petitioner's appointed attorney appeals to this Court, alleging that the circuit court erred in terminating the petitioner's parental rights under the circumstances described above. The petitioner's attorney contends that the petitioner's military service, if indeed he is determined to be serving on active duty in the military, would prevent the circuit court from terminating his parental rights in his absence.

This appeal presents a question of law involving the procedural rights of the petitioner. As this Court has consistently stated, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

In child custody matters, this Court has invariably declared that the legal system should not permit children to languish in uncertainty during the pendency of excessive periods of litigation. Thus, this Court has required circuit courts to address the rights of unknown fathers in order to avoid such uncertainty.[6] Clearly, in matters involving the custody of children, the interests of the child in attaining permanent placement are paramount and should be resolved as expeditiously as possible. *See* Syl. Pt. 1, in part, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991) ("[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.").

Notwithstanding the foregoing, based upon the mother's testimony in the present case that the petitioner represented that he was in the military, certain provisions of

---

[6]*See, e.g., In re Katie S.*, 198 W.Va. 79, 87, 479 S.E.2d 589, 597 (1996) (holding that "the circuit court should have considered the allegation that the father had abandoned his children when the abuse and neglect petition was presented."); *In re Christina L.*, 194 W.Va. 446, 455-56, 460 S.E.2d 692, 701-02 (1995) (holding that courts should avoid a result which "leaves the status of the children dangling, and the validity of a future adoption subject to challenge.").

the Servicemembers Civil Relief Act (hereinafter "SCRA") affect the termination of parental rights proceeding initiated in the circuit court.[7]  *See* 50 U.S.C. app. §§ 501-597b (2008).  As recognized in *In re A.R.,* 88 Cal.Rptr.3d 448 (Cal. Dist. Ct. App. 2009), principles espousing prompt resolution of matters of child custody "do not override congressional intent, as expressed in the SCRA, to strengthen national defense by providing for the temporary suspension of a court proceeding that might adversely affect the rights of an active military servicemember."  *Id.* at 456 (citing 50 U.S.C. app. § 502).

While multiple provisions of the SCRA may be applicable to this matter,[8] the most pertinent section for purposes of the current appeal is 50 United States Code appendix § 521(b)(1), providing that an affidavit must be filed regarding a defendant's status as a

---

[7]The SCRA was originally titled the "Soldiers' and Sailors' Civil Relief Act of 1940." It provides for "temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."  50 U.S.C. app. § 502.  The SCRA specifically applies to a "child custody proceeding."  *Id.* at § 521(a).  It applies to all state, federal, and municipal judicial or administrative proceedings, except criminal proceedings.  *Id.* at § 512.

[8]The SCRA attempts to ameliorate some of the difficulties encountered by military members on active duty through protections and benefits of both a substantive and procedural nature.  The procedural protections include limitations on default judgments and expanded rights to vacate default judgments, stays of civil and administrative proceedings, and the tolling of civil time limits and statutes of limitations.  Section 526(a) of the SCRA provides for the tolling of legal periods of limitation during a service member's military service, as follows:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

*See also id.* at § 521(g) (setting aside a default judgment entered while the service member was on active duty if the service member was "materially affected by reason of that military service in making a defense to the action" and has a "meritorious or legal defense. . . ."). Section 511 of the SCRA defines "judgment" to include "any judgment, decree, order, or ruling, final or temporary."

military member.  Section 521(b)(1) provides as follows:

> In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit –

> (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or

> (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

Thus, prior to entering judgment against an individual thought to be in the military, as in the present case, the requirements of section 521(b)(1) must be satisfied.[9]

If it is ultimately determined that the individual is in active military service, the provisions of the SCRA must be followed by the court in further proceedings on the issue. Any judgment resulting from a proceeding undertaken without the proper ascertainment of a defendant's military status, however, may ultimately be voidable under the SCRA. *See* 50 U.S.C. app. § 521(g).[10]

This Court's review of the record before us indicates that efforts to determine whether the petitioner was engaged in active military service may have been insufficient to satisfy the requirements of the SCRA. While it may ultimately prove impossible to accurately verify the petitioner's military status, the provisions of the SCRA demand that an investigation be conducted in a thorough and diligent manner. The parties' briefs do not

---

[9]Information may be sought through the Department of Defense, as follows: Defense Manpower Data Center (DMDC), [Attn: Military Verification], 1600 Wilson Blvd., Suite 400, Arlington, VA 22209-2593. *See Servicemembers Civil Relief Act (SCRA)*, https://www.dmdc.osd.mil/appj/scra/scraHome.do, United States Department of Defense, (last visited October 1, 2013).

[10]*See also In re Paternity of T.M.Y.*, 725 N.E.2d 997, 1004 (Ind. Ct. App. 2000) (holding that "[j]udgments entered in violation of this section are merely voidable and not void."); *Krumme v. Krumme*, 636 P.2d 814 (Kan. Ct. App. 1981) (holding that judgments entered in noncompliance with this section are voidable).

identify the precise method used by Mr. Belcher in the attempt to locate the petitioner, and this Court's review of the record provided on appeal does not reveal the degree to which the military locator services were utilized. It is particularly troubling that the petitioner's last name was misspelled during the search initiated by Mr. Belcher; thus, more definitive results may be obtained on remand when the search is conducted using the correct spelling of the petitioner's last name. *See Priority Records, LLC v. Tabora*, 2007 WL 2517312, * 1 (N.D. Cal. 2007) (determining plaintiff complied with SCRA affidavit requirement when plaintiff's counsel attested to having "conducted a search through the Department of Defense-Manpower Data Center, and determined that defendant is not serving in the military."); *Merrill v. Beard*, 2007 WL 461469, *3 (N.D. Ohio 2007) (denying motion for summary judgment for failing to comply with affidavit requirement and requiring plaintiff to set forth specific facts establishing "the efforts exerted to determine [d]efendant's military status.")*; Sprinkle v. SB&C Ltd.*, 472 F.Supp.2d 1235, 1244 (W.D. Wash. 2006) (compliance with the SCRA affidavit requirement "is a prerequisite to the entry of judgment for the plaintiff. . . ."); *In re Marriage of Thompson*, 832 P.2d 349 (Kan. Ct. App. 1992) (finding that entry of divorce/child support order against absent father violated SCRA where affidavit not filed).

Until a search has been undertaken within the guidelines of the SCRA and utilizing the correct spelling of the petitioner's name, the petitioner's parental rights to Carlissa K., if any, cannot be terminated based solely upon publication of notice in the Bluefield Daily Telegraph. As referenced above, if it is determined that the petitioner is in active military service, the provisions of the SCRA must be followed by the circuit court in further proceedings on this issue. If it is determined that the petitioner is not in active military service, the prior order terminating the petitioner's parental rights will stand, based upon the publication, adjudication, and disposition, as effectuated prior to this appeal.[11]

For the foregoing reasons, this Court finds that the circuit court's termination of the petitioner's parental rights was improper based upon the absence of a thorough investigation into the petitioner's alleged military service, the private investigator's use of a misspelling of the petitioner's name, and the lack of compliance with the requirements of the SCRA. We consequently reverse the decision of the Circuit Court of Mercer County and remand this case for further investigation regarding the current status of the petitioner's possible military service, consistent with this opinion.[12]

---

[11]In such instance, the circuit court should enter an order memorializing the results of the SCRA investigation and reaffirming the termination of parental rights.

[12]We also note that the urgency of termination of parental rights for purposes of preparation for adoption has been significantly reduced due to the circuit court's finding that

(continued...)

Reversed and Remanded.

**ISSUED:**  October 28, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin,
Justice Robin Jean Davis,
Justice Margaret L. Workman,
Justice Menis E. Ketchum and
Justice Allen H. Loughry II.

---

[12](...continued)
the child's mother has successfully completed her improvement period and regained full custody of the child.

7