**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana



FILED

Dec 18 2013, 7:22 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MATTER OF THE PATERNITY OF T.L.T.: | ) ) ) |
| STATE OF INDIANA, as Child's Next Friend ex rel., | ) ) ) No. 71A04-1305-JP-214 |
| Appellant-Respondent. | ) ) |

APPEAL FROM THE SAINT JOSEPH PROBATE COURT
The Honorable James N. Fox, Judge
The Honorable Aric J. Rutkowski, Magistrate
Cause No. 71J01-1006-JP-594

**December 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

In 2010, Terry Lee Thomas (Father) failed to appear at a hearing on a petition to establish paternity of T.L.T. That petition was filed by the State of Indiana (the State) as next friend of T.L.T. and assignee of the support rights of T.L.T.'s mother, Katie Rose Teeter (Mother). As a result of Father's failure to appear, the trial court entered default judgment against him and ordered him to pay child support. On December 18, 2012, Father filed a motion to set aside the default judgment of paternity, claiming he was never served with notice of the paternity action. Following a hearing, the court granted Father's motion. The State challenges that ruling as the sole issue on appeal.

We reverse.

T.L.T. was born August 23, 2008. It appears that on June 29, 2010, the State, on behalf of Mother, filed a paternity action against Father. Notice was sent to Father at an address in Irish Hills, but he claimed he never received it. The paternity matter was disposed of by default on or about October 12, 2010. Father claimed that he was notified of the default judgment by Mother on the same day judgment was rendered.[1] Father went to the prosecutor's office and asked why he had not been served with process. He was informed notice had been sent to the Irish Hills address. He had shared that address with Mother "for a little while", but had since moved. *Transcript* at 6. Father's driver's license reflects that he had lived at a different address for more than a year prior to the date of the summons. Father was informed by the prosecutor's office that if he "wanted to do something regarding

---

[1] Mother claimed at the hearing on Father's motion to set aside that she had called Father three days before the hearing and informed him of the paternity action and the date of the hearing. According to Mother, Father responded that "he never got subpoenaed so he was not showing." *Id.* at 18.

paternity, … [he] would need to file something on [his] own or hire a private attorney." *Id.* at 13. Father did not do that, and began paying child support pursuant to the order sometime in 2010 via weekly withholding from his paycheck. While the parties and T.L.T. lived in South Bend, Father exercised occasional visitation with T.L.T. That ceased, however, when Mother and T.L.T. moved to Michigan, where they currently reside.

On December 18, 2012, Father filed his motion to set aside the default judgment of paternity, claiming he was never served with notice of the paternity hearing. Father later explained at the hearing on his motion that he "just want[ed] to make sure that [T.L.T.'s] mine before I go further than where we're at right now." *Id.* at 14.[2] The court conducted a hearing on his motion on January 23, 2013. Finding that Father had not properly been served notice of the hearing in 2010, the trial court entered an order on February 6, 2013 setting aside the default judgment of paternity. On Mother's behalf, the State challenges the order setting aside the default judgment of paternity.

We note that the Father did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *In re Paternity of S.C.,* 966 N.E.2d 143 (Ind. Ct. App. 2012), *trans. denied*. In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.* Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf. *Id.*

---

[2] Although it does not affect our disposition in this case, we note that after the initiation of this appeal, the parties participated in genetic testing. On July 30, 2013, the laboratory conducting that testing issued the results: there is a 99.99% probability that Father is the biological father of T.L.T.

The State contends the trial court erred in setting aside the default judgment of paternity because Father was estopped from challenging the trial court's jurisdiction over his person. As a general proposition, "a judgment entered where there has been no service of process is void for want of personal jurisdiction" and may be collaterally attacked under Trial Rule 60(B)(6) at any time. *Stidham v. Whelchel,* 698 N.E.2d 1152, 1155 n.3 (Ind. 1998). We have concluded, however, that it was implicit in our Supreme Court's decision in *Stidham* that any personal jurisdictional attack on a judgment "must be made properly." *In re Paternity of T.M.Y.*, 725 N.E.2d 997, 1002 (Ind. Ct. App. 2000), *trans. denied.* "Properly" in this context, means "appeal[ing] the paternity judgment directly to this court within thirty days, Ind. Appellate Rule 2, or mov[ing] to set aside the judgment under T.R. 60(B)(6) on personal jurisdiction grounds 'at any time.'" *Id*. at 1002-03. In that case, as here, the challenger did neither. In the present case, Father's motion to set aside the judgment was not premised upon T.R. 60(B)(6) - something he could have done "at any time". Moreover, he did not appeal the trial court's decision to this court within thirty days. *See* App. R. 2. Accordingly, Father has waived the ability to challenge the judgment on appeal. *See id.*

Even were it not waived, however, Father's challenge to the default judgment would have been rejected on grounds of estoppel. In *In re Paternity of T.M.Y.*, a woman initiated a paternity action against Kevin Nickels, who was then serving in the military in Washington. A copy of the summons was sent to Nickels's military base in Washington. Following the hearing, at which Nickels did not appear, the trial court found Nickels to be the child's father and ordered him to pay weekly child support. Shortly thereafter, Nickels began paying child

4

support and continued to pay support for slightly more than two years. At that point, he stopped paying support and a letter was written on his behalf by his then-current wife to the trial court disputing the finding that Nickels was the child's father. The trial court responded in a letter, explaining that the paternity judgment had been entered and advising that Nickels should seek legal assistance if he had any further questions.

More than thirteen years later, the mother of the child petitioned the court to find Nickels in contempt for willfully refusing to pay child support for more than thirteen years. On the day of the contempt hearing, Nickels filed a motion to set aside the paternity judgment and requested paternity testing. Although the trial court declined to find Nickels in contempt, it denied his petition to set aside the paternity judgment and ordered him to begin paying his support arrearage. Nickels appealed, ultimately asking this court to vacate the paternity judgment, in part on grounds that the court did not have personal jurisdiction. We rejected that argument. Citing our Supreme Court's opinion in *Stidham v. Whelchel*, we held that "even though a judgment rendered without personal jurisdiction is a nullity from the start, a party against whom the court entered the judgment can ratify this originally null judgment." *In re Paternity of T.M.Y.*, 725 N.E.2d at 1002. The court determined that Nickels was estopped from raising the jurisdictional claim. The court explained: "Nickels voluntarily submitted himself to the trial court's jurisdiction by failing to contest the court's jurisdiction over his person and instead complying with the court's order in paying child support for over two years. Nickels' prior actions are inconsistent with this current position that the judgment is invalid." *Id.* at 1003.

Similarly, in the present case, Father paid support for more than two years before challenging the paternity judgment on grounds of lack of personal jurisdiction. Even assuming the trial court lacked personal jurisdiction when it issued the default paternity judgment, by paying support for more than two years, Father voluntarily submitted himself to the trial court's jurisdiction and thereby ratified the originally null judgment. *See In re Paternity of T.M.Y.*, 725 N.E.2d 997.[3] Therefore, Father is estopped from challenging the judgment after manifesting an intention to treat it as valid. The trial court's order granting Father's motion to set aside is reversed, and this cause is remanded for proceedings consistent with this opinion.

Judgment reversed.

KIRSCH, J., and BAILEY, J., concur.

---

[3] We feel compelled to note here a decision of this court that might be regarded as inconsistent with our holding in the present case, but which is in fact distinguishable. In *Trigg v. Al-Khazali*, 881 N.E.2d 699 (Ind. Ct. App. 2008), a default paternity judgment was entered against the father in 1996. The order establishing paternity also established the father's child support obligation. Child support payments were withheld from two of his paychecks in the next month. For reasons not relevant to our discussion, the father ceased paying support at that point. In 2005, he filed a petition to set aside the judgment on grounds of lack of personal jurisdiction. The parties thereafter participated in DNA testing, which established that the father was in fact the child's biological father. The parties thereafter filed a stipulated agreement in which they agreed to a parenting-time schedule; that agreement was approved by the court. Thereafter, the State, on the mother's behalf, filed a petition to enforce the child support order. Pursuant to that order, by October 30, 2006, the father's arrearage totaled $42,246.97. At that point, the trial court denied the father's petition to set aside the judgment.

The father appealed, arguing that the import of setting aside the default judgment would not be to call into question his paternity of the child; rather, it would permit him to present evidence as to his income, which in turn would impact the amount of the arrearage for which he was liable. With Judge Najam dissenting, the majority concluded that the father should be permitted to present evidence as to whether he received adequate notice of the paternity action: "Simply put, if he was not given adequate notice of Mother's petition to establish paternity when it was filed, then he is entitled to be heard as to the proper amount of support, including the more than ten years of arrearages, for which he is liable." *Id*. at 703. The court stressed that its holding was based upon "the unique facts of this case." *Id*. We interpret that to mean that, if in fact he was not given adequate notice of the paternity petition prior to the entry of default, granting the motion was the only vehicle by which father could address the proper amount of the considerable support arrearage for which he would be liable. In any event, we limit that decision to its unique facts, and deem it inapplicable in the present case.