James D. **BRUNO**, Appellant–Defendant,

v.

**WELLS FARGO BANK, N.A.,** Appellee–Plaintiff.

No. 46A03–0508–CV–365.

Court of Appeals of Indiana.

July 18, 2006.

Timothy F. Kelly, Beth L. Brown, Timothy F. Kelly & Associates, Dyer, IN, Attorneys for Appellant.

Christine M. Stach, Mark W. Baeverstad, Rotherberg Logan & Warsco, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, James D. Bruno (Bruno), appeals the trial court's grant of partial summary judgment and subsequent full summary judgment in favor of Appellee–Plaintiff, Wells Fargo Bank, N.A. (Wells Fargo).

We affirm in part, reverse in part, and remand.

### ISSUE

Bruno raises two issues on appeal, which we restate as the following six issues:

(1) Whether a genuine issue of material fact exists as to Bruno's revocation of his guarantee on a promissory note issued by Wells Fargo;

(2) Whether a genuine issue of material fact exists as to the formation of a fiduciary relationship between Bruno, Guarantor, and Wells Fargo, Lender;

(3) Whether Wells Fargo failed to mitigate its damages;

(4) Whether the trial court violated Bruno's due process rights by holding a hearing where Bruno's counsel was present by cellular phone, but not in person;

(5) Whether the trial court properly calculated the amount owed under the promissory note; and

(6) Whether there was sufficient evidence to support the trial court's award of attorney's fees, and whether those fees were reasonable under the circumstances.

### FACTS AND PROCEDURAL HISTORY

In 2002, Patrick O'Brien (O'Brien) approached Bruno and asked him to invest in a wholesale salvage business, Columbo Wholesale & Salvage, Inc. (Columbo). Bruno accepted O'Brien's offer to invest, but the two agreed that Bruno would not be involved in any of the business's operations. On February 10, 2003, O'Brien, on behalf of Columbo, negotiated a $100,000 revolving line of credit with Wells Fargo, memorialized by a note, which was guaranteed by O'Brien and Bruno. Specifically, the Guaranty states, in pertinent part:

CONTINUING UNLIMITED GUARANTY. For good and valuable consideration, [Bruno] ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Wells Fargo [ ] ("Lender") or its order, in legal tender of the United States of America, the indebtedness (as that term is defined below) of Columbo [ ] ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

INDEBTEDNESS GUARANTEED. The Indebtedness guaranteed by this Guaranty includes any and all of [Columbo's] indebtedness to [Wells Fargo] and is used in the most comprehensive sense and means and includes any and all of [Columbo's] liabilities, obligations, and debts to [Wells Fargo], now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit car indebtedness, lease obligations, other obligations, and liabilities of [Columbo], or any of them, and any present or future judgments against [Columbo], or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liqui-

dated, or unliquidated, determined or undetermined; whether [Columbo] may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recover on the Indebtedness may be or may become barred or unenforceable against [Columbo] for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

DURATION OF GUARANTY. This Guaranty ... will continue in full force until all Indebtedness incurred or contracted before receipt by [Wells Fargo] of any notice of revocation shall have been fully and finally paid and satisfied[,] and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to [Wells Fargo], by certified mail, at [Wells Fargo's] address ...

(Appellant's App. p. 22).

In February 2003, O'Brien made draws on the line of credit totaling $30,000.00. By March 10, 2003, the principal balance had reached $55,000.00. Following additional withdrawals by O'Brien, the principal balance was $73,000.00 by July 2003. At some point, Bruno realized that O'Brien had arranged for automatic debits from the Line of Credit to be deposited into his own personal account. This arrangement, along with O'Brien's successive withdrawals from the account concerned Bruno; consequently, Bruno contacted Wells Fargo on several occasions and requested that Wells Fargo close the line of credit or at least stop extending credit to O'Brien. However, O'Brien was authorized to make

the withdrawals, and the principal and interest payments on the note were up to date. Further, Wells Fargo explained that because O'Brien was a guarantor on the account, it could not close the line of credit or refuse O'Brien's withdrawals.

Then, in April 2004, with a principal balance of $73,000.00, Columbo went into default on the note for failing to make payments. On August 2, 2004, Wells Fargo filed a complaint on guaranty against Bruno.[1] On September 30, 2004, Bruno filed his answer, a counterclaim against Wells Fargo alleging breach of fiduciary duty and bad faith, and a third party complaint against O'Brien. On January 28, 2005, Wells Fargo filed a motion for partial summary judgment. On March 23, 2005, the trial court held a hearing on the motion; however, due to confusion concerning the time of the hearing, Bruno's counsel participated by cellular telephone. There is no transcript of the hearing available for this court's review. On April 12, 2005, the trial court granted Wells Fargo's motion for partial summary judgment, stating in its Order that "as a matter of law, [Bruno] is liable as guarantor on the note of [ ] O'Brien. Furthermore, as a matter of law, there was no fiduciary relationship between [Wells Fargo] and [Bruno]. Thus, [Bruno's] counterclaim alleging breach of fiduciary relationship between the parties should be dismissed." (Appellant's App. p. 5).

On April 29, 2005, Wells Fargo filed its motion for full summary judgment, and a hearing was held on this motion on July 1, 2005. On July 5, 2005, the trial court entered its Findings and Judgment in favor of Wells Fargo in the amount of $95,250.61, covering the note's principal,

---

**1.** The record indicates that O'Brien filed for bankruptcy under Chapter 7, and Columbo is no longer in business.

interest, late fees, expenses, attorney's fees, and court costs.

Bruno now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Bruno contends that the trial court improperly granted partial summary judgment and then complete summary judgment in favor of Wells Fargo. In support of his argument, Bruno asserts that several genuine issues of material fact exist, including a question as to his revocation of guaranty, as well as to the existence of a fiduciary relationship between he and Wells Fargo. Additionally, Bruno claims that Wells Fargo was not entitled to summary judgment because it failed to mitigate its damages and because the trial court violated his due process right by denying him a meaningful hearing on Wells Fargo's motion for summary judgment. Furthermore, Bruno claims that Wells Fargo failed to show that no genuine issue of material fact existed as to the amount owed under the agreement, and the amount expended in attorney's fees in pursuing the case.

### I. *Standard of Review*

Our standard of review for an appeal of a trial court's grant of summary judgment is well settled. Summary judgment is appropriate only where the designated evidence shows that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Legacy Healthcare, Inc. v. Barnes & Thornburg*, 837 N.E.2d 619, 624–25 (Ind.Ct.App.2005), *reh'g denied.* The party appealing the grant of summary judgment bears the burden of persuading this court that the trial court erred, but we still carefully scrutinize the entry of summary judgment to ensure that the non-prevailing party was not denied its day in court. *Id.* at 625. We do not weigh the evidence, but rather consider the facts in the light most favorable to the non-moving party. *Id.* We may sustain the judgment upon any theory supported by the designated evidence. *Id.*

### II. *Partial Summary Judgment*

#### A. *Bruno's Revocation of Guaranty*

Bruno first argues that he effectively revoked his guaranty for Columbo when he sent Wells Fargo a letter, dated March 10, 2003, stating that O'Brien was abusing the account. However, Bruno admits that he did not send the letter via certified mail, per the guaranty agreement's terms. Nonetheless, Bruno additionally contends that he reasonably provided Wells' Fargo with notice of his intent to revoke his guarantor position when he inquired on several occasions as to O'Brien's numerous withdrawals.

Initially, we observe that the interpretation of a guaranty is governed by the same rules applicable to other contracts. *Kruse v. National Bank of Indianapolis*, 815 N.E.2d 137, 144 (Ind.Ct.App. 2004). In construing a guaranty, this court must give effect to the intentions of the parties, which are to be ascertained from the language of the contract in light of the surrounding circumstances. *Id.* Generally, the nature and extent of a guarantor's liability depends upon the terms of the contract, and a guarantor cannot be made liable beyond the terms of the guaranty. *Id.* at 144–45. Nevertheless, the terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. *Id.* at 145. Additionally, writings executed simultaneously and related to the same transaction will be construed together in determining the intent underlying the contracts. In other words, the guaranty and any other written agreements it incorpo-

rates must be evaluated in conjunction with one another in order to establish the parties' intentions. *Id.*

■ Here, the commercial guaranty, wherein Bruno guaranteed Columbo's note from Wells Fargo, provided in pertinent part: "If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or other such place as Lender may designate in writing." (Appellant's App. p. 22). If the language of the contract is unambiguous, the parties' intent will be determined from the four corners of the contract. *Whitaker v. Brunner,* 814 N.E.2d 288, 293–94 (Ind.Ct.App.2004), *trans. denied.* "The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts." *Id.* at 293. Thus, in the present case, it is clear from the face of the guaranty agreement, signed by Bruno as Guarantor, that in order to effectuate a revocation, Bruno needed to submit the request in writing and by certified mail. In addition, it is clear from our review of the record that any writing Bruno may have produced and intended for Wells Fargo was not mailed by certified mail.

Further, we disagree with Bruno's contention that each time he spoke with representatives from Wells Fargo regarding O'Brien's withdrawals, he was in effect notifying Wells Fargo of his revocation of guaranty. Rather, our review of the record shows that in contacting Wells Fargo, Bruno repeatedly inquired as to how to prevent O'Brien's access to the account. In fact, even in Bruno's alleged written revocation, he states: "I feel that it is extremely important to stop [O'Brien] from using this account ... he is abusing this account and his use of the funds is inappropriate ... please do not let him draw on this account any longer." (Appel-

lant's App. p. 85). We fail to see how this language or the other conduct amounts to revocation of Bruno's guarantee on the account. Moreover, because we conclude that the contract is unambiguous, the "four corners" rule constrains us and leads us to hold that the language of the instrument controls. *See Adams v. Reinaker,* 808 N.E.2d 192, 195–96 (Ind.Ct.App.2004). Therefore, we conclude that the trial court did not error in determining that no genuine issue of material fact existed as to the ineffectiveness of Bruno's revocation of his position as guarantor for Columbo's note.

### B. *Fiduciary Relationship*

■ Next, Bruno disputes the trial court's dismissal of his counterclaim against Wells Fargo, alleging a breach of fiduciary duty. In particular, Bruno contends that the trial court erred in finding, as a matter of law, that there was no fiduciary relationship between he and Wells Fargo; instead, Bruno asserts that whether a fiduciary relationship existed between the two is a question of fact.

For support, Bruno cites *Kruse,* wherein we stated that although there is no Indiana case law discussing the implied duties that arise between creditor and guarantor, there is case law explaining the general concept of fiduciary duty in the context of lender and borrower. *See Kruse,* 815 N.E.2d at 148. Specifically in *Kruse,* we stated in pertinent part:

A fiduciary relationship does not exist between a lender and a borrower unless certain facts exist which establish a relationship of trust and confidence between the two. A confidential relationship exists whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other. Not only must there be confidence by one party in the other, but the party reposing the confidence must also be in a position of inequality, depen-

dence, weakness, or lack of knowledge. Furthermore, it must be shown that the dominant party wrongfully abused this confidence ... it must be shown that the dominant party wrongfully abused the confidential relationship by improperly influencing the weaker party as to obtain an unconscionable advantage. Whether such a relationship exists is essentially a question of fact.

*Id.* (quoting *Paulson v. Centier Bank,* 704 N.E.2d 482, 490 (Ind.Ct.App.1998), *reh'g denied, trans. denied* ).

Despite its categorization as a question of fact, we ultimately concluded in *Kruse* that there was no genuine issue of material fact as to whether the lender breached a fiduciary duty to Kruse, a guarantor, because the record made it clear that Kruse was not in a position of weakness or unequal bargaining power. *Kruse,* 815 N.E.2d at 148. In particular, we noted that Kruse had a significant amount of business experience and that the alleged conduct was authorized by the note agreement. *Id.* Additionally, because the record showed that Kruse was an absolute, rather than a collateral, guarantor, and the agreement contained an express waiver by Kruse of notice of any misconduct or other protection from indebtedness, we held that the financial institution owed no duty to notify Kruse of the principal's alleged misconduct. *Id.* at 146.

In the present case, as in *Kruse,* Bruno admits he is an experienced businessman, and it is apparent from the record that O'Brien was authorized to make the withdrawals. The record also reveals that the Guaranty Agreement signed by Bruno clearly stated it was a "continuing, unlimited guaranty." (Appellant's App. p. 22). However, Bruno nonetheless contends that Wells Fargo was in a position of power as to its knowledge of bank procedures. Consequently, Bruno, in essence, asserts that once he expressed his concerns re-

garding O'Brien's withdrawals, Wells Fargo was put on notice of O'Brien's misconduct and was obligated to advise Bruno on preventing further abuse of the account. Therefore, the situation here differs from *Kruse* in that there is no question regarding Wells' Fargo duty to notify Bruno of O'Brien's misconduct because the record shows both were aware of O'Brien's frequent withdrawals on the Line of Credit. Also, in the present case, we fail to find a clause in the Guaranty Agreement in which Bruno waived a general protection from indebtedness, as was found in the contract in *Kruse.* Thus, the issue before us now becomes what duty, if any, a financial institution owes to a guarantor upon discovering a borrower's potential abuse of an account.

Despite these differences, as well as our empathy with Bruno's placement of a certain amount of confidence in Wells Fargo, as in *Kruse,* we fail to find evidence in the record that Wells Fargo was in such a position of superiority as to have obtained an unconscionable advantage over Bruno. As previously mentioned, Bruno is an experienced businessman whose oversight of the account was acute enough to recognize O'Brien's successive withdrawals. In bringing the withdrawals to the attention of Wells Fargo associates, Bruno displayed a level of knowledge that indicates to us he was not in such a position of weakness as to be dependent upon Wells Fargo's expertise. Moreover, on a public policy note, we hesitate to set any precedent that would place financial institutions in a guardianship-like position as to parties with which they contract to provide loans. Casting full responsibility onto banks for overseeing inappropriate, but authorized, activity on loan accounts would essentially defeat the purpose of having a guarantor, reverting the ultimate risk back to the lender. Thus, despite the confidence Bruno placed in Wells Fargo's banking experience, we

conclude Wells Fargo did not abuse that confidence or improperly influence Bruno in any way by failing to instruct Bruno in the procedure to remove O'Brien as a signatory to the account.

### C. *Mitigation of Damages*

As a general rule, a nonbreaching party must mitigate damages. *Berkel & Co. Contractors, Inc. v. Palm & Associates, Inc.,* 814 N.E.2d 649, 660 (Ind.Ct. App.2004). "The principle of mitigation of damages addresses conduct by an injured party that aggravates or increases the party's injuries." *Beiger Heritage Corp. v. Kilbey,* 676 N.E.2d 784, 789 (Ind.Ct.App. 1997) (quoting *Wiese–GMC, Inc. v. Wells,* 626 N.E.2d 595, 599 (Ind.Ct.App.1993), *reh'g denied, trans. denied* ). Yet, this general rule is not without exception or limitation. *Berkel,* 814 N.E.2d at 660. The breaching party has the burden of proving that the nonbreaching party has failed to use reasonable diligence to mitigate damages. *Id.*

Here, Bruno alleges that Wells Fargo failed to mitigate its damages by failing to pursue collection of the debt from O'Brien. While Wells Fargo sent letters to O'Brien requesting payment, it discontinued its collection attempts after O'Brien responded that he had filed bankruptcy. However, Indiana law recognizes that "if the contract in question is an absolute guaranty, it 'casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor.'" *Kruse,* 815 N.E.2d at 150 (quoting *McEntire v. Ind. Nat'l Bank,* 471 N.E.2d 1216, 1223 (Ind.Ct.App.1984), *reh'g denied, trans. denied* ). In addition, here, the Guaranty agreement provides that Bruno's guaranty "includes any and all of Borrower's indebtedness ... whether Borrower may be liable individually or jointly with others, or primarily or secondarily" and "whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever ..." (Appellant's App. p. 22). Further, the agreement states that the "Guarantor waives any right to require Lender ... (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person ..." (Appellant's App. p. 23). Hence, we conclude that Bruno has not raised a genuine issue of material fact as to Wells Fargo's failure to mitigate damages.

### D. *Denial of a Hearing*

Bruno now asserts that his due process rights were violated when his counsel participated in the hearing on Wells Fargo's motion for partial summary judgment by cellular phone. Specifically, Bruno contends that requiring his counsel to respond to Wells Fargo's motion via cellular phone did not amount to meaningful participation in the proceeding.

It is generally acknowledged that procedural due process includes notice and an opportunity to be heard. *Harper v. Boyce,* 809 N.E.2d 344, 350 (Ind.Ct.App. 2004). A party is denied due process when he is denied the opportunity to argue his case to the trial court after that court has determined it would hear argument. *Chandler v. Dillon ex rel. Estate of Bennett,* 754 N.E.2d 1002, 1006 (Ind.Ct.App. 2001). This is particularly true for service of process and other such notice of initial pleadings, but it is also true of proceedings within a lawsuit. *Abrahamson Chrysler Plymouth, Inc. v. Insurance Company of North America,* 453 N.E.2d 317, 321 (Ind. Ct.App.1983).

Here, the record shows that while Wells Fargo was present in court for the hearing at 8:30 a.m., a clerical error led Bruno's counsel to believe that the hearing did not begin until 9:30 a.m. When Bruno's counsel did not show by 8:30 a.m., the trial court contacted counsel on her cellular

phone; however, there is conflicting evidence as to whether the trial court gave counsel the option to reschedule the hearing or requested the hearing proceed using her cellular phone. Regardless, in spite of the fact that there is no transcript available, the record makes it clear that the hearing was conducted, and that both parties presented arguments. Additionally, Wells Fargo, in its Verified Statement of the Evidence filed pursuant to Ind. Appellate Rule 31, relays that neither party presented any testimony, exhibits, or other evidence at the hearing.

In *Abrahamson,* a case cited by Bruno in his support of his argument that he was denied a fair hearing, the record indicated that Abrahamson never received any notice of the summary judgment hearing date or time; after going ahead with the hearing, the trial court then entered final judgment on the issues presented in favor of Insurance Company of North America. *Id.* at 318. Consequently, because Abrahamson received no notice and was given no opportunity to be heard, we reversed the trial court's decision, concluding that Abrahamson's due process rights had been violated. *Id.* at 321. Nevertheless, we distinguish the case before us from *Abrahamson* in that Bruno's counsel was given notice of the hearing, as well as an opportunity to present arguments to the trial court, albeit by cellular phone. Accordingly, we fail to find that the trial court violated Bruno's due process rights by conducting the hearing on Wells Fargo's motion for partial summary judgment with counsel for Bruno present by cellular phone.

### III. *Summary Judgment*

Bruno also contests the trial court's grant of full summary judgment in favor of Wells Fargo. Specifically, Bruno argues that Wells Fargo failed to show that no genuine issue of material fact exists as to the amount he owes under the guaranty

agreement. Further, Bruno disputes the trial court's calculation of attorney's fees he was ordered to pay as a result of summary judgment in favor of Wells Fargo.

### A. *Amount Due Under the Contract*

Bruno asserts that the record establishes a genuine issue of material fact as to the amount due under the contract. Specifically, Bruno maintains that Wells Fargo failed to explain how it calculated the interest owed on the note.

 Generally, the computation of damages is matter within the sound discretion of the trial court. *Brandeis Machinery & Supply Co., LLC v. Capitol Crane Rental, Inc.,* 765 N.E.2d 173, 177 (Ind.Ct. App.2002). A damage award will not be reversed upon appeal unless it is based on insufficient evidence or is contrary to law. *Id.* In determining whether the award is within the scope of the evidence, we may not reweigh the evidence or judge the credibility of witnesses. *Id.*

 In its Findings and Judgment issued on July 5, 2005, the trial court ordered Bruno to pay to Wells Fargo $95,-250.61—an amount which the order states includes principal, interest, late fees, and expenses on the note, as well as attorney's fees and court costs. While the record offers sufficient evidence that $73,000.00 of the total amount owed was designated as the principal balance on the note, it is less evident as to how Wells Fargo or the trial court determined the remainder due. As pointed out by Wells Fargo in its Appellee's Brief, the only designated evidence in the record as to damages is the affidavit of Wells Fargo Vice President, Stephen Swadinsky (Swadinsky), and the affidavit of Wells Fargo's attorney, Mark Baeverstad (Baeverstad).

While it is apparent from the record that the interest rate on the note was subject to change in accordance with Wells Fargo's periodic changes in set rates, we

have no evidence in the record before us as to what fluctuations occurred in the interest rate over the period of time interest was accruing on Columbo's note, specifically from April 2004 to when the trial court's judgment was entered in July of 2005. We do find that various rates are mentioned in various designated documents, such as in Wells Fargo's Complaint filed on August 2, 2004, which cites an interest rate of $8.62 per diem, and in the undated affidavit of Swadinsky, stating that the unpaid interest on the note as of April 22, 2005 was $3,900.43, with a per diem interest rate of $11.66. Nonetheless, even though we are able to roughly estimate how the trial court arrived at its total judgment amount, we agree that there is a genuine issue of material fact as to the calculation of interest, as well as late fees. Therefore, we remand the issue of damages to the trial court with instructions to more specifically calculate the damages owed by Bruno as guarantor of Columbo's note.

### B. *Attorney's Fees*

Finally, Bruno contends that Wells Fargo submitted insufficient evidence for the trial court to accurately determine reasonable attorney's fees. In particular, Bruno highlights that the only evidence before the trial court as to this issue was the affidavit of Baeverstad, wherein Baeverstad declared he and other members of his firm had expended 80.4 hours of work on the case at a rate of $150.00 to $200.00 per hour, for a total of $14,295.50 plus expenses. Based on the trial court's reference to Baeverstad's affidavit in its judgment, Bruno, as well as this court, infers that Wells Fargo's award includes the entire amount suggested by Baeverstad, which is $17,271.39. Bruno additionally argues that such an amount, covering the entirety of Wells Fargo's attorney's fees, is unreasonable.

■■■■■ Generally, Indiana follows the American Rule, which requires each party to pay his or her own attorney's fees. *Rogers Group, Inc. v. Diamond Builders, LLC,* 816 N.E.2d 415, 420 (Ind.Ct.App. 2004), *trans denied.* However, parties may shift the obligation to pay such fees through contract or agreement, and courts will enforce the agreements as long as they are not contrary to law or public policy. *Id.* The determination of reasonableness of an attorney's fee necessitates consideration of all relevant circumstances. *Boonville Convalescent Center, Inc. v. Cloverleaf Healthcare Services, Inc.,* 834 N.E.2d 1116, 1127–28 (Ind.Ct.App.2005), *reh'g denied, trans. denied.*

■■■■■ Here, the Guaranty agreement provided: "Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorney's fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty." (Appellant's App. p. 23). However, relying on our opinion in *Smith v. Kendall,* 477 N.E.2d 953, 955 (Ind.Ct.App.1985), Bruno argues that an attorney need not be compensated for all the legal services he or she performed in attempting to collect on a note. Instead, he maintains that an award of attorney's fees should reflect the amount Wells Fargo reasonably had to expend to reduce to judgment its right to recovery. *See id.* Also, we note that in *Smith* we stated:

> The court's (or the jury's) determination of a reasonable attorney's fee must be based on evidence presented at trial which fairly tends to prove the amount due. The contractual obligation of the maker of the note to pay attorney's fees upon default is evidenced by the note itself. However, that obligation cannot be reduced to an enforceable judgment without evidence being presented a trial from which the amount of a reasonable attorney's fee can be determined.... [I]n actions on promissory notes, [ ] a

plaintiff must establish [ ] not only his right to recover an attorney's fee, but also the amount thereof, by proper evidence.

*Id.* at 954–55.

 In the present case, with only Baeverstad's affidavit designated for our review, we agree with Bruno that Wells Fargo failed to provide sufficient evidence to assist the trial court in determining a reasonable amount of attorney's fees. Further, we emphasize that even under a contract, an award of attorney's fees must be reasonable. *Walton v. Claybridge Homeowners Ass'n, Inc.*, 825 N.E.2d 818, 826 (Ind.Ct.App.2005). Therefore, especially in light of our holding in *Smith* as to the reasonableness of fees pertaining to the recovery of promissory notes, we remand this issue to the trial court for reconsideration, alongside its re-consideration of damages.

## CONCLUSION

Based on the foregoing, we conclude: (1) Bruno did not effectively revoke his guarantee on Columbo's note; (2) no fiduciary relationship existed between Bruno and Wells Fargo; (3) Wells Fargo did not fail to mitigate its damages; (4) Bruno's due process rights were not violated by denial of an in-person hearing; and (5) insufficient evidence was presented as to damages and attorney's fees. Accordingly, we remand this case to the trial court on the issue of damages only, with instructions to request that the parties present additional evidence for an accurate determination of the award.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and DARDEN, J., concur.