**Charles D. TRIGG, Appellant–Respondent,**

v.

**Erin Leigh AL–KHAZALI, Appellee–Petitioner.**

No. 02A03–0705–JV–263.

Court of Appeals of Indiana.

Feb. 29, 2008.

Rehearing Denied May 7, 2008.

Donald E. James, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Charles D. Trigg ("Father") appeals the trial court's denial of his petition to set aside judgment in this paternity action. We reverse and remand.

### Issue

Did the trial court err in denying Father's petition to set aside judgment?

### Facts and Procedural History

Father and Erin Al–Khazali ("Mother") had a brief relationship from December 1994 to May 1995. On September 28, 1995, Mother gave birth to N.W. On November 17, 1995, Mother filed a paternity action, in which she claimed that Father was N.W.'s biological father. On January 9, 1996, the trial court held an initial hearing. Father failed to appear at that hearing. The court acknowledged that it had received proof of service on him and set trial for January 30, 1996. On that date,

Father again failed to appear and the trial court entered default judgment. The trial court entered an order establishing paternity and requiring Father to pay child support in the amount of $117.00 per week, plus $5.00 per week on the arrearage of $1,287.00. Also on January 30, 1996, an order to income payor to withhold income was sent to Father's employer. Child support payments were withheld from Father's paychecks on February 13, 1996, and February 21, 1996.

■ On January 10, 2005, Father filed a petition to set aside judgment based upon Indiana Trial Rule 60(B). He claimed that he did not receive sufficient notice of Mother's petition to establish paternity and that therefore the default judgment was void for lack of personal jurisdiction. On March 3, 2005, Father and Mother filed with the trial court a stipulated agreement regarding DNA testing. On April 1, 2005, the trial court denied the stipulated agreement pending a hearing on Father's petition to set aside judgment.[1] Despite the trial court's order, the parties participated in DNA testing. The test results showed a 99.996 percent probability that Father is N.W.'s biological father. On August 25, 2005, Father filed a motion to modify child support order. He argued that his weekly obligation should be modified due to a substantial change in circumstances. On November 9, 2005, Mother and Father filed a stipulated agreement in which they agreed to a parenting time schedule. On February 2, 2006, the trial court approved this agreement.

On February 11, 2007, the trial court, in response to a petition to enforce child support order filed by the State on November 27, 2006, ordered that Father's arrearage totaled $42,246.97, as of October 30, 2006.

On February 12, 2007, the trial court denied Father's petition to set aside judgment, finding in pertinent part as follows:

[T]his court need not determine whether [Father] received sufficient service of process as to the paternity proceedings. The record clearly shows that [Father] made several requests for affirmative relief after he filed his Trial Rule 60(B) motion to set aside the default judgment. His request for, and obtaining, affirmative relief in the form of the approved Stipulation that modified his original supervised parenting time order serves to estop [Father] from denying this court's personal jurisdiction over him. . . . [Father] sought affirmative relief from this Court by submitting a Stipulation for DNA testing, which the Court temporarily denied. . . . Finally, [Father] submitted himself to this court's jurisdiction by filing his Motion to Modify Child Support Order on August 25, 2005, which remains pending and set for hearing at his request. Such motion constitutes a request for affirmative relief from this court, as discussed above, rather than a defense to the action brought against him. . . . [Father] is not entitled to relief under his Verified Petition to Set Aside Judgment I.R.T.P. 60 for lack of personal jurisdiction. The January 30, 1996, Order Establishing Paternity and resulting $117.00 per week child-support obligation are neither void nor voidable.

Appellant's App. at 15–16. Father now appeals.

### Discussion and Decision

■ Father argues that the trial court erred in denying his petition to set aside judgment. Father contends that he

---

1. The use of genetic testing to set aside paternity is outside the equitable discretion of the trial court. *In Re Paternity of T.M.Y.*, 725 N.E.2d 997, 1005 (Ind.Ct.App.2000) (citing *Fairrow v. Fairrow*, 559 N.E.2d 597, 599 (Ind. 1990)), *trans. denied.*

was not adequately served with notice[2] of the paternity suit and that therefore the trial court's January 30, 1996, order, which established paternity and set forth Father's support obligation, is void for lack of personal jurisdiction. *See Smith v. Tisdal,* 484 N.E.2d 42, 43 (Ind.Ct.App.1985) (where trial court lacks personal jurisdiction, judgment is void). It is commonly understood that procedural due process includes notice and an opportunity to be heard. *Bruno v. Wells Fargo Bank, N.A.,* 850 N.E.2d 940, 948 (Ind.Ct.App.2006). A party is denied due process when he is denied the opportunity to argue his case to the trial court after that court has determined it would hear argument. *Id.* This is particularly true for service of process and other such notice of initial pleadings. *Id.*

Father asks us to determine that the evidence was insufficient to prove adequate notice and to reverse the trial court's denial. In fact, the trial court explained in its order that it need *not* determine whether Father received adequate service. Rather, the trial court denied Father's motion to set aside judgment on the grounds that Father was estopped from challenging the trial court's jurisdiction over him.

As the trial court noted, this Court has held that a party who seeks affirmative relief from a court voluntarily submits himself to the jurisdiction of that court and is thereafter estopped from challenging the court's personal jurisdiction. *See Sims v. Beamer,* 757 N.E.2d 1021, 1025 n. 3 (Ind.Ct.App.2001). We have explained that "[t]he rationale behind this application of estoppel is twofold: first, considerations of fairness prevent one from accepting

benefits based upon his inconsistent positions; second the act of accepting benefits is seen as a voluntary consent to the court's jurisdiction." *Allen v. Proksch,* 832 N.E.2d 1080, 1097 (Ind.Ct.App.2005).

While we do not dispute the trial court's general statement of the law on this issue, we are confronted with unique facts in this case. Father filed his petition to set aside judgment on January 10, 2005, when he apparently had doubts that he was N.W.'s biological father. Father then voluntarily participated in DNA testing and discovered that in all likelihood, N.W. is his biological son. Upon learning the DNA test results, Father and Mother entered into a parenting time agreement that was approved by the trial court. At the hearing on his petition to set aside judgment, Father freely admitted paternity. In his appellate brief, Father states that he has "arranged parenting time ... and has embraced the child.... The result of setting aside the child support order of 1996 would allow the trial court to entertain evidence of the Parties' correct wages so as to establish a reasonable weekly support order *retroactive to the date of the filing of the petition.*" Appellant's Br. at 12 (emphasis added).

We interpret Father's statements and actions to mean that Father does not challenge the trial court's conclusion that through his recent participation in this case, he has subjected himself to the trial court's personal jurisdiction. Neither does he contest the trial court's determination that such jurisdiction extends retroactively more than ten years to the initiation of the paternity action. Father does argue, however, that the trial court's January 30,

---

**2.** Apparently, the process server returned a completed proof of service form to the trial court prior to the initial hearing. On January 9, 1996, the trial court noted in its CCS, "Proof of service on [Father]." According to

the form, Father was personally served on December 14, 1995, at 1200 Swinney Avenue. Father testified that he had once lived at 1229 Swinney Avenue but that he had moved from that address in the spring of 1995.

1996, order establishing paternity and calculating his support obligation is void because the court did not have personal jurisdiction over him when it entered that order. In other words, he claims that he was wrongly denied an opportunity to be heard as to the *amount* of his support obligation. At the hearing on his petition to set aside judgment, he asked the trial court to set aside that original order and allow him to present evidence regarding his income from November 17, 1995, to the present.

■ In its order denying Father's motion to set aside judgment, the trial court noted its earlier denial of Father and Mother's stipulation for DNA testing, stating,

> [Father] sought affirmative relief [i.e., a court order for DNA testing] from [this] [c]ourt for the purpose of dis-establishing his paternity of [N.W.] and wiping out double-digit child-support arrearages. That the relief sought was contrary to well-established Indiana Supreme Court precedent and public policy only serves to reinforce that the Respondent should be estopped from denying this court's personal jurisdiction over him.

Appellant's App. at 16. We find it noteworthy, however, that when Father learned that N.W. was very likely his son, he embraced his responsibility by exercising parenting time and admitting that his

support obligation applies retroactively to the date of Mother's petition to establish paternity. Regardless of Father's initial motivation for filing his motion to set aside judgment, he is entitled to due process in this case. Simply put, if he was not given adequate notice of Mother's petition to establish paternity when it was filed, then he is entitled to be heard as to the proper amount of support, including the more than ten years of arrearages, for which he is liable.[3]

In sum, based on the unique facts of this case and contrary to the trial court's order, we think that it is in fact relevant whether Father received adequate notice of Mother's paternity petition prior to the entry of default judgment against him. If the trial court determines that Father received sufficient notice, then the January 30, 1996, default judgment is valid and Father's challenge must fail. If there is insufficient evidence of adequate notice, however, then the default judgment is void and the trial court must allow Father the opportunity to present evidence relevant to the determination of his support obligation from November 17, 1995, to the present. The trial court should then recalculate his support obligation accordingly.

The determination of whether Father received adequate notice of Mother's petition prior to January 30, 1996, relies in part upon the testimony of several parties,

---

3. As noted by Judge Najam in his dissent, a motion to set aside judgment based on Indiana Trial Rule 60(B) must be filed not more than one year after the judgment if the motion is based upon subsections (1), (2), (3), and/or (4). In this case, neither Father nor the trial court identified the subdivisions of Rule 60(B) upon which his petition relied. In our view, his allegation of improper service of process amounted to a Rule 60(B)(6) claim that the judgment was void for lack of personal jurisdiction. Therefore, we do not agree with the dissent that Father's motion was untimely.

From a policy standpoint, we think that to adopt the dissenting opinion would be to say that if a father who was denied the opportunity to present evidence relevant to the *amount* of child support wished to challenge that determination, he would be forced to also contest the determination of paternity. Considering the interests of the children in such cases, we think it is more productive to encourage fathers to come forward and acknowledge paternity, knowing that if in fact their due process rights have been violated, they may still seek an opportunity to be heard as to the amount of support owed.

including Father and the process server. For this reason, we hereby remand to the trial court to make that determination and then to proceed in a manner consistent with this opinion.

Reversed and remanded.

BAILEY, J., concurs.

NAJAM, J., dissents with separate opinion.

NAJAM, Judge, dissenting.

I respectfully dissent. Father's Verified Petition to Set Aside Judgment was made pursuant to Indiana Trial Rules 60(B)(1), 60(B)(2), and 60(B)(8).[1] Trial Rule 60(B) states, in pertinent part:

On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

(1) Mistake, surprise, or *excusable neglect* [;]

(2) Any ground for a motion to correct error, including without limitation *newly discovered evidence*, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

\* \* \*

(6) The judgment is void;

\* \* \*

(8) Any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4). *The motion shall be filed ... not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4).* A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.[2]

(Emphases added.)

Here, Father sought relief on the following grounds: (1) "excusable neglect related to lack of actual or written notice of the hearing"; (2) "to hear newly discovered evidence, and to allow discovery"; and (3) Father's "reason to believe that he is not the biological father of the minor child." Appellant's App. at 16. However, Father filed his request for relief in January of 2005, approximately nine years after the trial court's initial order establishing paternity and Father's weekly child support. Accordingly, Father's requests under Rule 60(B)(1), for "excusable neglect," and Rule 60(B)(2), "to hear newly discovered evidence," cannot stand. See T.R. 60(B)(8); Appellant's App. at 16. And, as the majority notes, granting Father's request for relief under Rule 60(B)(8)—on the grounds that he is not the biological father of the child—here would be outside the discretion of the trial court. *See, e.g., In re Paternity of M.M.B.,* 877 N.E.2d 1239, 1245 (Ind. Ct.App.2007).

Even if one were to assume that Father's petition was timely under Rule 60(B)(6), the trial court's order should be affirmed. "[W]here[,]as here, the trial court enters special findings and conclu-

---

1. Neither the trial court nor the parties specifically identify the subdivisions of Rule 60(B) on which Father's petition relied. Nonetheless, those subdivisions are apparent from the face of Father's petition.

2. The majority focuses on Father's argument that he was denied proper service of process for the initial hearing. But as Father notes, his argument on this point is merely to avoid the "meritorious claim or defense" requirement of Rule 60(B)(8). *See Moore v. Terre Haute 1st Nat'l Bank,* 582 N.E.2d 474, 477 (Ind.Ct.App.1991) (holding, in the context of Rule 60(B)(1), that "a T.R. 60(B) claimant need not show a meritorious defense or claim" when the claimant alleges faulty process); Appellant's Brief at 8.

sions pursuant to Indiana Trial Rule 52(A), ... [t]he trial court's findings and conclusions will be set aside only if they are clearly erroneous." *Stonger v. Sorrell,* 776 N.E.2d 353, 358 (Ind.2002). A judgment is clearly erroneous if the evidence does not support the trial court's findings or if those findings do not support the judgment. *See id.*

It is well recognized that "[a] person may be estopped from challenging a void judgment if that person has manifested an intention to treat a judgment as valid." *Nickels v. York (In re T.M.Y.),* 725 N.E.2d 997, 1003 (Ind.Ct.App.2000) (citing *Jennings v. Jennings,* 531 N.E.2d 1204, 1206 (Ind.Ct.App.1988)), *trans. denied.* In *Nickels,* the trial court entered a paternity judgment declaring the father the biological parent of a child in April of 1982. The father subsequently paid child support for the next two years until October of 1984, when the payments stopped. In February of 1998, the mother sought to have the father held in contempt. And in November of that year, the father filed a Rule 60(B) motion to disestablish paternity. Among other things, the father argued that the paternity order could not stand because he had not been properly served notice of the April 1982 hearing. This court rejected the father's appeal, noting that he had "voluntarily submitted himself to the trial court's jurisdiction by failing to contest the court's jurisdiction over his person and instead complying with the court's order in paying child support." *Id.*

Here, the evidence and the court's findings are equivalent to those in *Nickels.* Mother sought a support order against Father, which was granted after Father failed to appear at the January 1996 hearing. Father then paid the first two child support payments without objection, but those payments stopped when Father suddenly moved to Tennessee "for better weather." Appellant's App. at 16. Several years later, in 2003, the State began income withholding through Father's Tennessee employer. Shortly thereafter, Father sought to disestablish his paternity over N.W. Twenty-two months after Father filed his petition, he argued, for the first time, that he was denied proper service of process for the January 1996 hearing.

After recounting those facts, the trial court, relying on *Nickels,* concluded that Father was estopped from challenging the allegedly void judgment because he had manifested an intention to treat that judgment as valid. Specifically, the court stated as follows:

> H. "A person may be estopped from challenging a void judgment if that person has manifested an intention to treat that judgment as valid."
>
> * * *
>
> I. While [Father] ceased his support payments after only 2 payments and not 2 years [as in *Nickels* ] (and denies knowing that he did so), the stakes of this case present double the arrearages. And while [Father] apparently changed his theory of relief under Trial Rule 60(B) due to the DNA results, his motion for relief from judgment clearly demonstrates the purpose for which he sought those results....

*Id.* at 17–18 (citations and alteration omitted). In other words, the trial court found that the original income-withholding from Father's paychecks gave him actual notice of the support judgment, and Father's compliance with those withholdings "manifested an intention to treat the judgment as valid." *See Nickels,* 725 N.E.2d at 1003. In such circumstances, request for relief from a void judgment cannot stand. *See id.* at 1002–03. The court's conclusion that Father treated the judgment as valid is supported by the court's findings, which

are, in turn, supported by the evidence. The trial court relied on this court's opinion in *Nickels,* which is directly on point. Accordingly, it cannot be said that the court's judgment was clearly erroneous, and I would hold that the trial court did not err in denying Father's petition under Rule 60(B)(6).