In the Matter of the GUARDIANSHIP OF Winona E. BREWER, Adult.

Debra J. Ault, Rebecca L. Pavone and Elizabeth S. Elia–Gold, Appellants–Respondents,

v.

Robert Brewer, Appellee–Petitioner.

No. 36A04–0907–CV–407.

Court of Appeals of Indiana.

March 2, 2010.

---

Stephanie S. Mellenbruch, Denise W. Connell, Montgomery, Eisner & Pardieck, LLP, Seymour, IN, Attorneys for Appellants.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Respondents, Debra J. Ault (Ault), Rebecca L. Pavone (Pavone) and Elizabeth Elia–Gold (Elia–Gold) (collectively, Appellants), appeal the trial court's appointment of a guardian over Winona "Toby" Brewer (Toby).

We affirm.

### ISSUES

Appellants present three issues for our review, which we restate as the following two issues:

(1) Whether the trial court abused its discretion by appointing Susan Bevers (Bevers) as the guardian over Toby's estate; and

(2) Whether the trial court abused its discretion by authorizing a transfer of existing accounts with pay on death dispositions to new accounts.

### FACTS AND PROCEDURAL HISTORY

Prior to 1950, Robert Brewer (Robert) and Toby "went together" for four years while they were high school students in Jackson County, Indiana. (Transcript p. 19). Thereafter, their lives parted and they went their separate ways. Toby married and had a family. Her husband died in 1968. Robert married and had a family of his own and his wife passed away as well.

In 1997, Robert's brother-in-law passed away. Toby, who had graduated from high school with Robert's brother-in-law, had sent Robert's brother-in-law a card two days prior to his passing. Robert wrote Toby to notify her of the death, and Toby called Robert. Robert and Toby developed a relationship despite the fact that Toby then lived in California and Robert lived in Vallonia, Indiana. The next year they married and Toby moved back to Indiana to live with Robert.

Toby kept her home in California and her daughter, Pavone, who lived close by, checked on it frequently. Toby also kept her finances separate from Robert's by keeping her own bank accounts and paying her own bills with the assistance of Pavone, who was a signatory on Toby's checking account. Additionally, Toby would sometimes have her sister, Honey, and Honey's daughter, Ault, assist her with paying bills.

On September 29, 2007, Toby had a stroke and Robert took her to the hospital. The stroke caused Toby to have difficulty walking, made her weak, and at times she would have difficulty speaking clearly. On October 2, 2007, Toby moved into the Covered Bridge Health Campus so that she could have twenty-four hour skilled nursing care.

On October 5, 2007, Robert had been with Toby at physical therapy. Upon their return to Toby's room, Ault, Pavone, two attorneys, and the Director of the care facility, Erica Muhlbach (Muhlbach), met

them with power of attorney papers for Toby to sign. Robert became angered by the situation and told Toby not to sign anything. He grabbed Toby's wheelchair and refused to let go, but someone "wrested" the wheelchair away from him. (Tr. p. 28). Muhlbach believed that Toby asked that Robert leave so she could sign the paperwork, but other persons in the room did not see or hear Toby say anything during this encounter. Muhlbach instructed Robert to leave, but he refused. Ault, Pavone, and the attorney moved Toby to another room, and Robert followed. Eventually, an employee of the care facility called the police and they instructed Robert to leave, which he did.

The attorneys explained to Toby what she was signing, and she responded appropriately to their questions and provided accurate information. She signed the document entitled General Power of Attorney which appointed Ault, Pavone, and Elia-Gold (another daughter of Toby's) as her co-attorneys-in-fact. The document gave complete control over Toby's finances to the co-attorneys-in-fact, and additionally provided:

> This power shall not be affected by my subsequent disability, incapacity or by lapse of time or incompetency and it is my intent that all authority conferred by me on my attorney-in-fact shall be exercisable notwithstanding any subsequent incompetency that I may suffer, except this power shall terminate upon the appointment of a guardian of my estate. In the event it becomes necessary to appoint a guardian of my estate, it is my desire that my co-attorneys-in-fact be appointed such guardians.

(Appellants' App. p. 78).

On November 2, 2007, Robert filed a petition seeking to be appointed guardian of the person for Toby. Appellants filed objections to Robert's petition. On No-vember 29, 2007, Appellants filed a petition seeking to have Ault appointed as guardian of Toby's estate and person. Both petitions seeking an appointment of a guardian attached a report from Dr. Towriss, Toby's treating physician, as an exhibit in support of each petition. Dr. Towriss concluded in his report that at the time of her release from the hospital, Toby "was not competent to make her own decisions based on her decreased responsiveness and intermittent confusion." (Appellant's App. pp. 66, 73).

On May 16, 2008, the trial court appointed Susan Bevers (Bevers) as a *guardian ad litem* for Toby. Bevers met with Toby and developed a report and recommendation for the trial court. Bevers concluded that Toby was "very cognizant for periods of time," but other times "she seemed to fade off." (Appellant's App. p. 41). Toby told Bevers "that she didn't think that her niece, Debbie Ault, would be a good guardian because she is too busy." (Appellant's App. p. 41). "She stated that [Robert] would be a fine guardian." (Appellant's App. p. 42). Bevers concluded that the appointment of a guardian over Toby was in her best interests and that a "financial institution" should be appointed as a guardian over Toby's estate. (Appellant's App. p. 42).

On April 29 through May 1, 2009, the trial court conducted a hearing on the issue of whether a guardianship should be appointed over Toby and her estate. Just prior to the beginning of the hearing, Appellants filed a motion to withdraw their petition to appoint a guardian over Toby's estate, contending that a guardianship over the estate was unnecessary in light of the fact that a power of attorney had been established and no petition had been filed to revoke or amend that power of attorney. On May 19, 2009, the trial court entered an Order appointing Bevers, Robert, and Ault

as co-guardians of Toby's person, and appointing Bevers as guardian of her estate. On May 22, 2009, Bevers sent notice that she was going to establish "a new guardianship account" and requested information so that she could close "any account now in existence" including "all CDs, investment accounts, retirement accounts, etc." (Appellant's App. p. 24). On May 28, 2009, Appellants filed a motion to correct error and motion to stay, both of which the trial court denied on June 15, 2009.

Appellants now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

"All findings and order of the trial court in guardianship proceedings are within its discretion." *In re Guardianship of Hollenga*, 852 N.E.2d 933, 936 (Ind.Ct.App. 2006) (citing Ind.Code § 29-3-2-4). An abuse of discretion occurs only when the decision of the trial court is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

 Neither Robert nor Bevers has filed an Appellee's Brief. Where the appellee fails to file a brief on appeal, we may, in our discretion, reverse the trial court's decision if the appellant makes a *prima facie* showing of reversible error. *Johnston v. Johnston*, 825 N.E.2d 958, 962 (Ind.Ct.App.2005). *Prima facie* error has been defined as "at first sight, on first appearance, or on the face of it." *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind.Ct.App. 2006). This rule was established for our protection, so that we can be relieved of the burden of controverting arguments advanced in favor of reversal where that burden properly lies with the appellee. *Johnston*, 825 N.E.2d at 962.

### II. Appointment of a Guardian

Appellants argue that the trial court abused its discretion by appointing a guardian over Toby's estate. Specifically, they contend that Toby had created a durable power of attorney, and, therefore, no guardian over her estate was necessary. Additionally, they argue that if a guardian was properly appointed, the trial court abused its discretion by not appointing Toby's designated co-attorneys-in-fact. We address these issues together because our analysis is intertwined.

We first note that guardianship proceedings are guided by statute. Indiana Code section 29-3-5-3 provides that if a guardianship is sought for an incapacitated person or a minor and "the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor; the court shall appoint a guardian under this chapter." In appointing a guardian, the court is required to give "due regard to the following:"

(1) Any request made by a person alleged to be an incapacitated person, including designations in a durable power of attorney under IC 30-5-3-4(a).

(2) Any request contained in a will or other written instrument.

(3) Any request made by a minor who is at least fourteen (14) years of age.

(4) Any request made by the spouse of the alleged incapacitated person.

(5) The relationship of the proposed guardian to the individual for whom guardianship is sought.

(6) Any person acting for the incapacitated person under a durable power of attorney.

(7) The best interest of the incapacitated person or minor and the property of the incapacitated person or minor.

I.C. § 29–3–5–4. Indiana Code section 29–3–5–5 sets out the order of priorities for appointment as guardian:

(1) A person designated in a durable power of attorney.

(2) The spouse of an incapacitated person.

(3) An adult child of an incapacitated person.

(4) A parent of an incapacitated person, or a person nominated by will of a deceased parent of an incapacitated person or by any writing signed by a parent of an incapacitate person and attested to by at least two (2) witnesses.

(5) Any person related to an incapacitated person by blood or marriage with whom the incapacitated person, or a person nominated by will of a deceased parent of an incapacitated person or by any writing signed by a parent of an incapacitated person and attested to by at least two (2) witnesses.

(6) A person nominated by the incapacitated person who is caring for or paying for the care of the incapacitated person.

(b) With respect to persons having equal priority, the court shall select the person it considers best qualified to serve as guardian. The court, acting in the best interest of the incapacitated person or minor, may pass over a person having priority and appoint a person having a lower priority or no priority under this section.

Indiana Code section 30–5–3–4(a) provides that: "A principal may nominate a guardian for consideration by the court if protective proceedings for the principal's person or estate are commenced. The court shall make an appointment in accordance with the principal's most recent nomination in a power of attorney except for good cause or disqualification."

Appellants rely largely on *Hollenga* to develop their argument that the trial court abused its discretion by appointing guardians over Toby's estate. Hollenga was an elderly widow with no children. *Hollenga*, 852 N.E.2d at 934. Cook, a tenant who lived in a property which Hollenga owned, helped Hollenga discover that a financial advisor who held power of attorney for Hollenga was taking advantage of her. *Id.* Later, Hollenga's neighbor and two of his friends from church filed a petition for appointment as guardians over Hollenga's estate. *Id.* Hollenga opposed the guardianship petition, and executed a durable power of attorney on October 2, 2003, naming Cook as her attorney-in-fact, becoming effective upon the determination of her treating physician that she was incompetent. *Id.* at 935. Twenty-one days later, a *guardian ad litem* appointed by the trial court filed a report finding that Hollenga was not capable of making sound financial decisions. *Id.* In February 2004, the trial court conducted a hearing on the petition to establish a guardianship over Hollenga's estate and determined that Hollenga was incapable of handling her property because of confusion about her financial affairs, her inability to manage, protect, and care for her property, and her susceptibility to undue influence. *Id.* "The trial court did not make any findings that good cause had been shown or that Cook was disqualified from serving as Hollenga's guardian." *Id.*

On May 23, 2005, Hollenga was hospitalized, and her doctor determined that she was incapacitated; "thus, her power of attorney became effective." *Id.* Hollenga's neighbor and his friends who were serving as her estate guardians filed a petition to set aside her power of attorney, "alleging that she was incompetent and under undue influence at the time she executed it." *Id.*

at 936. The estate guardians made no effort to serve notice to Cook. Eventually, the trial court issued an Order concluding as follows:

[Hollenga] was not legally competent to create a contractual agency relationship at the time the durable power of attorney was prepared and executed that purported to name [Cook] as her attorney in fact in the event of her incapacity. Therefore, the power of attorney was never valid.

[ ] Because no valid power of attorney exists, there is no statutory requirement that notice of these proceedings [be given] to [Cook], and there is no need to revoke the power of attorney.

*Id.*

On appeal, we noted that:

Hollenga executed a power of attorney, which named Cook as her attorney in fact. At the time the trial court granted the petition to establish an estate guardianship, Hollenga's power of attorney was in existence and had not been revoked. Therefore, pursuant to Indiana Code Section 30-5-3-4(a), the trial court, upon establishing the guardianship over Hollenga's estate, was required to appoint Cook, who was Hollenga's most recent nomination in a power of attorney, as Hollenga's guardian, unless there was a showing of "good cause or disqualification."

*Id.* at 938. Therefore, we remanded with instructions that the trial court appoint Cook as Hollenga's guardian, but gave an opportunity for persons to challenge that appointment by showing "good cause or disqualification." *Id.*

Here, the trial court's May 19, 2009 Order concluded that Toby's incompetence caused the General Power of Attorney document which she signed to be void or invalid. This is in line with the trial court's conclusions in *Hollenga*, which we

reversed on appeal. *Hollenga,* 852 N.E.2d at 936. However, distinguishing facts make *Hollenga* inapplicable to this situation.

Cook, Hollenga's designated power of attorney, was not afforded the opportunity to partake in the guardianship hearing, and we have no indication from *Hollenga* as to what evidence was presented to demonstrate her incapacity at the time she signed the document conveying power of attorney to Cook. Using these facts as a point of comparison, Appellants contend that the validity of the power of attorney was not an issue before the trial court here. We disagree. In spite of the fact that Robert filed no document specifically seeking to have Toby's designation of power of attorney declared void, a large portion of the guardianship hearing focused on the events that took place on October 5, 2007, and her competency on that date. The trial court was presented with Dr. Towriss' report that Toby was incompetent as of three days prior to her signing the document granting power of attorney. Additionally, the trial court was presented with the report of the *guardian ad litem,* which explained that Toby's understanding was intermittent. Furthermore, the *guardian ad litem* noted Toby's desire that Ault not be appointed as her guardian, which directly contradicted portions of the General Power of Attorney document. Appellants attempted to controvert the evidence of Toby's incompetency by presenting testimony from the attorney who prepared the General Power of Attorney and spoke with Toby just prior to her signing it.

More importantly, the trial court found that the Appellants were estopped from denying that Toby was incompetent when she signed the document appointing Appellants as her co-attorneys-in-fact be-

cause of their guardianship petition filed on November 29, 2007. Attached to that petition was Dr. Towriss's report declaring that Toby was incompetent as of October 2, 2007, three days prior to her signing the power of attorney document. Estoppel had been defined as: "A bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true." BLACK'S LAW DICTIONARY, 589 (8th ed.2004). Thus, we agree with the trial court that by presenting evidence that Toby was incompetent as of October 2nd, Appellants' are estopped from denying Toby's incompetency when she signed the documents establishing power of attorney on October 5th.

■ Appellants are correct that Indiana law favors appointment of a principal's nominated attorney-in-fact as her guardian, but here there is sufficient evidence to support the trial court's conclusion that Toby was incompetent when she signed the General Power of Attorney, and the Appellants are estopped from disputing that fact. Therefore, Toby made no nomination in a power of attorney that would make applicable the considerations of Indiana Code section 30–5–3–4, or the priorities favoring attorneys-in-fact in Indiana Code section 29–3–5–4 and 5.

■ Appellants also contend that there was no evidence or determination that the appointment of Bevers as guardian over Toby's estate was in Toby's best interest. Indiana Code section 29–3–5–4 requires that the trial court give due regard to the best interests of the incapacitated person when choosing a guardian. Although the trial court did not explicitly state that the appointment of Bevers was in Toby's best interest, it does not require an in-depth study of the trial court's Order to discern why it appointed a third party as the guardian over Toby's estate. The trial

court noted the animus that existed between Robert and the Appellants, a finding sufficiently supported by the record. The last thing in Toby's interest would be a protracted legal fight between her husband and children. The appointment of a disinterested party as the guardian over Toby's estate will hopefully prevent unnecessary disputes caused by mistrust between Robert and the Appellants. Therefore, we conclude that the Appellants have failed to demonstrate that the trial court abused its discretion when it appointed Bevers as guardian over Toby's estate.

### III. *Unification of Toby's Assets*

■ Appellants argue that the trial court abused its discretion by empowering Bevers to combine Toby's financial holdings into one account, which would effectively dispose of Toby's directive that the funds in certain accounts be paid to her daughters upon her death. Appellants contend that no statutory authority permits a guardian to effectively terminate disposition designations.

Because Toby had directed that the funds in these accounts were payable upon her death to her daughters, Appellants assume that Bevers' action of moving the financial holdings was an estate planning decision, and contend "[ ] Bevers has no authority to make estate planning decisions on behalf of [Toby]." (Appellant's Br. p. 22). In support of their argument, Appellants cite Indiana Code section 29–3–9–4(a), which provides:

> Upon petition of the guardian ... and after notice to such persons as the court may direct, the court may, after hearing and by order, authorize the guardian to apply or dispose of the principal or income of the estate of the protected person that the court determines to be in excess of that likely to be required for the protected person's future support or

for the future support of the protected person's dependents during the lifetime of the protected person, in order to carry out the estate planning that the court determines to be appropriate for the purposes of minimizing current and prospective income, estate, or other taxes. The court may accordingly authorize the guardian to make gifts, outright or in trust, on behalf of the protected person to or for the benefit of the prospective legatees, devisees, or heirs, including any person serving as the protected person's guardian, or to other individuals or charities, to whom or in which it is shown that the protected person had an interest.

Appellants correctly note that this statute requires the filing of a petition, provision of notice, and a hearing prior to a guardian undertaking estate planning activities on behalf of an incapacitated person, none of which Bevers did prior to beginning the process of unifying Toby's financial holdings. However, we disagree with the Appellants' assumption that Bevers has engaged in estate planning by unifying Toby's accounts for the purpose of management of her estate.

■■■ We note that accounts with payable on death designation, or P.O.D. designation, are considered a nonprobate transfer when distributed at the time of death. *See Lewis v. Estate of Wynn*, 900 N.E.2d 476, 480 (Ind.Ct.App.2009), *trans. denied*. Although they are treated differently than joint accounts during the lifetime of the account holder, they are distributed at the time of death as if they were jointly owned by the deceased and the beneficiary. *Id*. at 481 (citing I.C. chapter 32–17–13). For this same reason, we do not equate the transfer of funds from or into an account with a P.O.D. designation as being an estate planning decision.

Moreover, Bevers was acting within express statutory authority when unifying the funds. Indiana Code section 29–3–7–5(a) instructs that: "A guardian shall take possession of the guardianship property, title to which shall remain in the protected person subject to the right of the guardian to possess and dispose of the property as provided by law." Indiana Code section 29–3–8–2(b) provides that:

The guardian (other than the temporary guardian) of an incapacitated person has all the powers to perform the guardian's responsibilities, including the powers with respect to the incapacitated person and the incapacitated person's property regardless of where the property is located, that are granted to the guardian of a minor enumerated in subsection (a)(1) through (a)(9).

Subsection (a)(8), grants "[t]he powers with respect to the guardianship property as are granted to a guardian under section 4 of this chapter with respect to guardianship property." And Indiana Codes section 29–3–8–4, provides, in part, that:

A guardian (other than a temporary guardian) may exercise all of the powers required to perform the guardian's responsibilities, including the following:

. . .

(3) To invest and reinvest the property of the protected person in accordance with powers vested in, and according to the standards imposed upon, trustees under IC 30–4–3–3(c).

By unifying Toby's financial holdings, Bevers was facilitating her duty to take possession of Toby's property and to provide care and supervision over that property. These acts were fully within her authority as guardian over Toby's estate. Therefore, we conclude that the trial court did not abuse its discretion when it authorized

and suggested that Bevers unify Toby's accounts for administration.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by appointing Bevers as guardian over Toby's estate, nor did it abuse its discretion by empowering Bevers to unify Toby's financial holdings for administration of that estate.

Affirmed.

VAIDIK, J., and CRONE, J., concur.