## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 09 2018, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Rhonda Yoder Breman
Breman Law LLC
Indianapolis, Indiana

Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

James F. Olds
A. Shane Hobson
Stuart & Branigin, LLP
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Guardianship of
John T. Aldrich, an Adult,

Brock L. Aldrich,

*Appellant (Cross-Petitioner Below)*,

v.

Sandra Aldrich,

*Appellee (Petitioner Below)*.

April 9, 2018

Court of Appeals Case No.
08A02-1704-GU-821

Appeal from the Carroll Circuit
Court.
The Honorable Benjamin A. Diener,
Judge.
Trial Court Cause No. 08C01-1610-
GU-32

**Friedlander, Senior Judge**

[1] Brock L. Aldrich appeals the trial court's judgment appointing him and Sandra Aldrich to serve as co-guardians for the person and estate of John T. Aldrich, an incapacitated adult. We affirm.

[2] John and his first wife had two children, Brock and Kelti. After John's first wife died in the mid-1980s, he began a relationship with Sandra. They have been together for approximately thirty years and have been married for over nine years. Further, the two adopted Sandra's granddaughter, Ariel Huffer, when Ariel was sixteen years old.

[3] In 2003, John executed a will naming Brock and Kelti as co-personal representatives. Under the will, John devised 10% of the proceeds of his auto parts business to Ariel in trust and divided the remainder evenly between Brock and Kelti. In 2008, John and Sandra executed a premarital agreement setting forth their individual assets and stating that neither has any interest in the property of the other.

[4] In 2012, John was diagnosed with mild dementia. As John's condition worsened, his family sought to take steps to ensure that John and his property would be looked after. In April 2015, Sandra and John met with an attorney. On April 20, 2015, John executed a durable power of attorney (POA1) appointing Sandra and Brock as joint attorneys-in-fact over his business, property, health, and medical matters. Brock did not learn of the existence of POA1 until August 2016. Tr. Vol. I, p. 96.

[5] Later, Brock and John met with a different attorney without consulting Sandra. On December 4, 2015, John executed a "General Durable Springing Power of Attorney" (POA2) which purportedly revoked all prior grants of powers of attorney and named Brock as his sole attorney in fact. Appellant's App. Vol. II, p. 89. POA2 specifies that Brock's powers will take effect after two physicians determine in writing that John is unable to manage his affairs. Also on December 4, 2015, John executed an Appointment of Health Care Representative and Living Will Declaration, in which he named Brock as his health care attorney in fact. Sandra did not learn of the existence of POA2 and the health care appointment until late 2016. Tr. Vol. I, p. 17.

[6] On March 30, 2016, John executed a document transferring ownership of his auto parts business to a revocable trust, of which Brock was the trustee. John further deeded to Brock the real estate upon which the business was located. Neither John nor Brock discussed the matter with Sandra.

[7] During 2015 and 2016, Brock and Sandra disagreed about the management of John's finances and medical care and further accused each other of improprieties in handling John's money. This case began on October 17, 2016, when Sandra filed a verified petition asking that she be appointed as sole guardian over John's person and estate. On December 29, 2016, John, through separate counsel, filed a verified motion for temporary restraining order and preliminary injunction seeking to enjoin and restrain Brock from acting as John's attorney in fact.

[8] On December 30, 2016, Brock filed a cross-petition for appointment of guardian over the estate and person of John, asserting he should be John's sole guardian. Brock later filed a response to John's motion for temporary restraining order and preliminary injunction, asserting that only he had the authority to hire attorneys to represent John. Meanwhile on December 16, 2016, John, through yet another attorney (who had been contacted by Brock), filed a petition to dissolve his marriage to Sandra. The outcome of that case is not discussed in the record.

[9] The trial court held an evidentiary hearing, after which the parties submitted proposed findings of fact and conclusions thereon. On March 29, 2017, the trial court entered findings of fact, conclusions thereon, and judgment. The court noted that neither party "argued strongly" to nullify POA1 or POA2 on grounds of mental incapacity, even though John's doctor indicated that John may have lacked capacity to execute either document. Appellant's App. Vol. II, p. 16. The court thus "assume[d] validity of all legal instruments" despite "having severe reservations regarding John's capacity since 2015." *Id.* The court denied John's request for a restraining order and injunctive relief. The court further ordered as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED: That Sandra Aldrich is appointed guardian over John Aldrich's physical person and his estate, excepting all aspects of John's health care as set out in John's Appointment of Health Care Representative and Living Will Declaration, executed December 4, 2015.

> IT IS THEREFORE ORDERED, ADJUDGED AND
> DECREED: That Brock Aldrich is appointed guardian over
> John's health care as set out in John's Appointment of Health
> Care Representative and Living Will Declaration, executed
> December 4, 2015, with the exception that Brock has no
> authority to remove John from his marital residence without
> Sandra's consent.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND
> DECREED: That pursuant to Ind. Code § 30-5-3-4, for good
> cause shown, this Court DIRECTS Sandra to revoke POA1 and
> POA2.

Appellant's App. Vol. II, p. 22. This appeal followed.

[10] The trial court is vested with discretion in making determinations as to the guardianship of an incapacitated person. *In re Guardianship of Atkins*, 868 N.E.2d 878 (Ind. Ct. App. 2007) (citing Ind. Code § 29-3-2-4 (2001)), *trans. denied*. Therefore, we review the trial court's judgment for an abuse of discretion. *In re Guardianship of M.N.S.*, 23 N.E.3d 759 (Ind. Ct. App. 2014). In determining whether the trial court abused its discretion, we review the court's findings and conclusions, and we may not set aside the findings or judgment unless they are clearly erroneous.[1] *Id.* We will not reweigh the evidence nor will we reassess the credibility of witnesses; instead, we will consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.* We review questions of law de novo and owe no

---

[1] We are grateful to the trial court for preparing extensive findings and conclusions, which aided our review.

deference to the trial court's legal conclusions. *In re Guardianship of Phillips*, 926 N.E.2d 1103 (Ind. Ct. App. 2010).

[11] Neither party disputes that John is incapable of managing his own affairs. Further, neither party challenges the validity of POA1 or POA2 on grounds that John lacked competency to execute those documents. Rather, they disagree as to how those documents apply to this guardianship proceeding.

[12] Brock argues: (1) the trial court erred by establishing a guardianship when a valid power of attorney (POA2) already existed; or (2) if the trial court did not err in establishing the guardianship, the trial court erred by appointing Sandra as co-guardian with Brock over John's person and estate.

## 1. Power of Attorney and Guardianship

[13] Brock claims the trial court should not have appointed a guardian because POA2 was valid and takes precedent over a guardianship. Brock concludes the court should have simply allowed him to proceed as John's attorney in fact and health care representative.

[14] The statute that governs the appointment of guardians provides, in relevant part:

> if it is alleged and the court finds that:
>
> (1) the individual for whom the guardian is sought is an incapacitated person or a minor; and
>
> (2) the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor;

the court shall appoint a guardian under this chapter.

Ind. Code § 29-3-5-3 (1989). By contrast, if the court determines it is not in the incapacitated person's best interests to appoint a guardian, the court may dismiss the proceedings. *Id.*

As noted, a trial court has discretion in issuing findings and orders in guardianship proceedings. Ind. Code § 29-3-2-4. When a protected person is represented by an attorney in fact pursuant to a power of attorney, the trial court has less discretion. Indiana Code section 30-5-3-4 (1991) states, "the court shall make an appointment in accordance with the principal's most recent nomination in a power of attorney except for good cause or disqualification." Further, Indiana Code section 29-3-5-5 (2016) prioritizes candidates to serve as a guardian, and "a person designated in a durable power of attorney" has the highest priority. The court "may pass over a person having priority and appoint a person having a lower priority or no priority" if the court concludes it is in the "best interest of the incapacitated person" to so conclude. *Id.* Finally, "a guardian does not have power, duty, or liability with respect to property or personal health care decisions that are subject to a valid power of attorney." Ind. Code § 30-5-3-4(b).

In *In re Guardianship of Morris*, 56 N.E.3d 719 (Ind. Ct. App. 2016), a person executed a durable power of attorney appointing two of her six children as attorneys in fact. She later became mentally incapacitated, and the six children disagreed about their mother's medical care and finances. Some of the children petitioned the court to appoint a guardian. The trial court appointed all six as

co-guardians. On appeal, the Court affirmed the determination that Morris was incapacitated but reversed for further proceedings, concluding the trial court failed to consider the impact of the power of attorney, pursuant to which the two attorneys in fact had specific authority over their mother's person and estate. *See also In re Guardianship of Hollenga*, 852 N.E.2d 933 (Ind. Ct. App. 2006) (reversing trial court's appointment of a guardian and remanding to appoint the protected person's attorney in fact as guardian unless good cause for disqualification was shown).

[17] We conclude from the foregoing that a trial court is not barred from appointing a guardian simply because the incapacitated person previously executed one or more powers of attorney. Instead, by statute the court must prioritize naming the attorney in fact as guardian unless good cause exists for choosing another person, and the trial court must account for the attorney in fact's powers when setting forth the guardian's powers. As was shown in *Morris* and *Hollenga*, failure to comply with the statutes that govern the role of the attorney in fact in a guardianship proceeding may provide grounds for reversal.

[18] In this case, the trial court was not barred from appointing a guardian for John because John had previously executed POA1 and POA2. The trial court acknowledged the existence of those documents and further acknowledged that an attorney in fact should generally receive priority in appointing a guardian. The court determined there was "good cause" in this case to place limitations upon Brock's powers by appointing Sandra as co-guardian. Further, the court explained that Sandra's authority over John's person was subject to Brock's

authority as health care representative. Appellant's App. Vol. II, p. 18. We conclude the court gave due consideration to POA1, POA2 and statutory requirements, and this case is factually distinguishable from *Morris* and *Hollenga*.

[19] Again, neither party disputes that John is incapacitated and unable to care for himself and his property. We cannot conclude the court abused its discretion by appointing a guardian merely because John had previously executed grants of powers of attorney.

## 2. Selection of Guardian

[20] Brock claims the trial court was required to select him as John's sole guardian because he is John's attorney in fact pursuant to POA2 and because there is no basis in the record to require him to share guardianship powers with Sandra. Sandra concedes Brock is entitled to primary consideration to serve as guardian. She argues the court found good cause to name her and Brock as co-guardians, and she further claims the record supports that determination.

[21] When a trial court considers who to appoint as a guardian, "the court shall make an appointment in accordance with the principal's most recent nomination in a power of attorney except for good cause or disqualification." Indiana Code § 30-5-3-4. There is no dispute that POA2 (which names Brock as the sole attorney in fact) was more recent than POA1 (which names Brock

and Sandra as co-attorneys in fact).[2] The key question is whether there was good cause to name Brock and Sandra as co-guardians instead of appointing Brock as sole guardian.

[22] The trial court determined good cause existed to not name Brock as sole guardian because of Brock's negative role in: (1) John's December 2016 petition to dissolve his marriage with Sandra; and (2) John's placement of his business in a trust benefitting Brock and selling the business's property to Brock.

[23] The record supports the trial court's determination as to Brock's role in the attempted dissolution of John and Sandra's marriage. John and Sandra had been a couple for thirty years, and married for over nine years. In addition to being John's spouse, Sandra has been John's primary live-in caregiver since the onset of his dementia, helping him with medical appointments and medications, preparing meals, and driving for him.

[24] There is evidence that John was mentally incapacitated to the point that he was unable to manage his own affairs since at least September 2016. Tr. Ex. Vol., Ex. 1. His doctor explained in a January 2017 deposition that John is unable to live alone and cannot make basic decisions about his own life, and John may

___

[2] The parties dispute whether POA2 revoked POA1, thus extinguishing Sandra's status as co-attorney in fact under POA1. This dispute is irrelevant because Indiana Code section 30-5-3-4 establishes that the most recent nomination of attorney in fact, POA2, takes precedence in selecting a guardian. There is also a dispute as to whether Brock qualifies as an attorney in fact pursuant to POA2 because that document requires two physicians to certify in writing that John is incapacitated before Brock's powers take effect. For purposes of this appeal, we assume that POA2's naming of Brock as attorney in fact, albeit contingent on proof of John's incapacity, satisfies the requirements of Indiana Code section 30-5-3-4.

have been in this condition since December 2015. The doctor further stated John does not have many lucid moments where he could make rational decisions. While John could "articulate what he wants" at any given moment, he may not understand "the long-term effects." Tr. Ex. Vol., Ex. 15, p. 30. In 2016 Brock and John tried to call one of John's prior attorneys to request a copy of his will, but Brock observed that John was unable to accomplish that task, having "difficulty speaking" and expressing his thoughts. Tr. Vol. I, p. 124. It is undisputed that maintaining a routine, with familiar settings and people, is important to John's mental and physical health.

[25] Despite the foregoing evidence, in November 2016 Brock transported John to an attorney, Natalie Snyder, who prepared and filed a petition to dissolve John and Sandra's marriage. The petition requested that John be given sole possession of the marital residence, thus requiring Sandra to move out. Neither John nor Brock discussed divorce with Sandra before the petition was filed, and she found out about the petition only through third parties. When Sandra asked John about it, he did not remember meeting with Attorney Snyder and said he would "never" divorce Sandra. Tr. Vol. I, p. 45. John testified at the evidentiary hearing, and although he clearly was not in full command of his faculties he stated that he did not want to divorce Sandra and wanted to continue living with her.

[26] This evidence establishes that Brock arranged to have an attorney prepare and file a dissolution of marriage petition for John when Brock knew or should have known that John lacked the capacity to make such a momentous decision. The

result of the petition, if successful, would have been John's separation from his wife and long-time primary caregiver, and such a major disruption was likely to have been detrimental to his mental health. Brock indicated he was concerned about Sandra's alleged mismanagement of John's money, but he did not pursue other protective legal measures, such as exercising his powers under POA1 or POA2. This potential disregard for John's mental health in the name of protecting his money justified the trial court's decision to appoint Sandra as John's co-guardian, especially the restriction that Brock could not remove John from his home without Sandra's agreement.

[27] Brock points to evidence that John was not incapacitated when John and Brock met with Attorney Snyder in November 2016. Brock further points to his own testimony that John had been talking about divorce since the summer of 2015 and that Sandra had threatened to leave John in 2016. These arguments are requests to reweigh the evidence. There is sufficient evidence to support the court's determination that good cause exists to appoint Sandra and Brock as co-guardians despite Brock's status as attorney in fact, and we find no abuse of discretion. *See In re Guardianship of Brewer*, 922 N.E.2d 82 (Ind. Ct. App. 2010) (affirming trial court's choice of guardian; facts supported trial court's determination that the court's choice of guardian was in the best interest of the incapacitated person amid feuding between the person's children and spouse). We need not discuss the circumstances of John's transfer of his business to a trust benefitting Brock or transfer of his business's building to Brock.

[28] On a related subject, Brock argues the trial court erred in ordering Sandra to set aside POA1 and POA2 because he concludes the court failed to comply with statutory requirements governing such revocations. Indiana Code section 30-5-3-4 (b) provides, in relevant part:

> A guardian has no power to revoke or amend a valid power of attorney unless specifically directed to revoke or amend the power of attorney by a court order on behalf of the principal. A court may not enter an order to revoke or amend a power of attorney without a hearing. Notice of a hearing held under this section shall be given to the attorney in fact.

[29] Brock argues the trial court failed to hold a hearing to determine whether POA1 and POA2 should be revoked. We disagree. During the evidentiary hearing in this case, the parties presented evidence about the circumstances under which POA1 and POA2 were executed and presented competing claims as to the validity of those documents. Sandra stated in her petition for guardianship that she sought to be appointed sole guardian of John without limitation, which by necessity would have required the court to order the revocation of POA1 and POA2. Similarly, Brock's request to be named sole guardian would have necessarily required the court to order the revocation of POA1. The potential revocation of either or both POAs was squarely before the court and the parties. Requiring the court to hold a second hearing on that subject would exalt form over substance. We find no abuse of discretion. *See Guardianship of Brewer*, 922 N.E.2d 82 (rejecting appellant's claim that the validity of a grant of a power of attorney was not an issue during trial proceedings; regardless of the specific allegations in the parties' pleadings, the parties presented extensive evidence

questioning the circumstances under which the power of attorney was executed).

[30] For the reasons stated above, we affirm the judgment of the trial court.

[31] Judgment affirmed.

Mathias, J., and Crone, J., concur.